**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARGOT FLINN, CAROL JOHNSON, STASYS NEIMANAS, BARBARA REGARD, HENRY REGARD, and STEPHEN WEILAND, <br><br>    *Plaintiffs*, <br><br>v. <br><br>CITY OF EVANSTON, <br><br>    *Defendant*. | Case Number: |

**CLASS ACTION COMPLAINT**

  Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland, by counsel and pursuant to 42 U.S.C. § 1983, bring this class action lawsuit challenging on Equal Protection grounds Defendant City of Evanston's use of race as an eligibility requirement for a program that makes $25,000 payments to residents and direct descendants of residents of the city five-plus decades if not more than a century ago. Plaintiffs seek a judgment declaring Defendant's use of race to be unconstitutional. Plaintiffs also seek an injunction enjoining Defendant from continuing to use race as a requirement for receiving payment under the program and request that the Court award them and all class members damages in the amount of $25,000 each.

**JURISDICTION AND VENUE**

  1. The Court has jurisdiction of this lawsuit under 28 U.S.C. §§ 1331 and 1343(a)(3).

  2. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

3. Plaintiff Margot Flinn is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Flinn's parents and grandparents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Flinn does not identify as Black or African American, nor did her Evanston parents or grandparents identify as Black or African American.

4. Plaintiff Carol Johnson is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Johnson's parents and grandparents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Johnson does not identify as Black or African American, nor did her Evanston parents or grandparents identify as Black or African American.

5. Plaintiff Stasys Neimanas is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Neimanas' parents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Neimanas does not identify as Black or African American, nor did his Evanston parents identify as Black or African American.

6. Plaintiff Barbara Regard is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Barbara Regard's parents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Barbara Regard does not identify as Black or African American, nor did her Evanston parents identify as Black or African American.

7. Plaintiff Henry Regard is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Henry Regard's parents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Henry Regard does not identify as Black or African American, nor did his Evanston parents identify as Black or African American.

8. Plaintiff Stephen Weiland is at least 18 years of age and is a direct descendant of Evanston residents. Plaintiff Weiland's father and grandparents lived in Evanston between 1919 and 1969 and were at least 18 years of age at the time. Plaintiff Weiland does not identify as Black or African American, nor did his Evanston father and grandparents identify as Black or African American.

9. Defendant City of Evanston ("Evanston" or "the City") is a general-purpose municipal government located in Cook County, Illinois. It is a home rule unit, as defined in the 1970 Illinois Constitution.

## FACTUAL BACKGROUND

10. Through a series of resolutions adopted by the Evanston City Council, Evanston has created a program to provide $25,000 in cash payments to residents who lived in Evanston between 1919 and 1969 and their children, grandchildren, and great-grandchildren. The program, entitled "City of Evanston Local Reparations Restorative Housing Program," uses race as a requirement for receiving payment and purports to remedy housing discrimination experienced by Black and African American residents 55 to 105 years ago. The City committed an initial $10,000,000 to the program at the time it was created. It committed an additional $10,000,000 in November 2022.

11. Following an initial set of applications, further applications will be accepted on a rolling basis. At no point has Evanston asserted that the program is closed.

12. As part of the application process, applicants are required to state whether they and their ancestors identify as Black or African American.

13. The first group of persons eligible for $25,0000 payments under the program are current Evanston residents who identify as Black or African American and were at least 18 years

of age between 1919 and 1969. Evanston refers to this first group as "ancestors." To date, the City has approved payments to 141 "ancestors" and at least 129 have already received payments.

14. The second group of persons eligible for $25,000 payments under the program are individuals who identify as Black or African American, are at least 18 years of age, and have at least one parent, grandparent, or great grandparent who identifies (or identified) as Black or African American, lived in Evanston between 1919 and 1969, and was at least 18 years of age at the time. Evanston refers to this second group as "direct descendants." A "direct descendant" is not required to be a current Evanston resident to receive a payment.

15. At no point in the application process are persons in the first and second groups required to present evidence that they or their ancestors experienced housing discrimination or otherwise suffered harm because of an unlawful Evanston ordinance, policy, or procedure or some other unlawful act or series of acts by Evanston between 1919 and 1969. In effect, Evanston is using race as a proxy for having experienced discrimination during this time period.

16. A third group of persons eligible for $25,000 payments under the program are current Evanston residents who are at least 18 years of age and can show that they experienced housing discrimination after 1969 because of an Evanston ordinance, policy, or procedure. Unlike the first and second group of recipients, Evanston does not expressly use race as an eligibility requirement for this third group.

17. On March 27, 2023, Evanston expanded the program to include an option to receive a direct cash payment.

18. As of October 5, 2023, Evanston was still verifying "direct descendant" applications, including applicants' "ancestor" information.

19. By January 11, 2024, Evanston had approved 454 "direct descendant" applications, but had not made any payments to the approved applicants. The City has represented that all 454 will receive $25,000 each.

20. On or about January 11, 2024, Evanston randomly assigned selection numbers to the 454 approved "direct descendants" to determine the order in which the payments will be made. Evanston anticipates making $25,000 payments to at least 80 approved "direct descendants" in 2024. The remaining approved "direct descendants" presumably will be paid sometime after 2024.

21. As of May 1, 2024, the City had met with 70 of the 80 "direct descendants" who are most likely to receive payments in 2024. Some 60 of these "direct descendants" opted to receive a direct cash payment.

22. At all relevant times, Plaintiffs satisfied and continue to satisfy all eligibility requirements for participating in the City's program as "direct descendants" other than the race requirement.

23. At all relevant times, Plaintiffs were able and ready to apply for payments under the program and would have applied but for the program's race-based eligibility requirement. Plaintiffs remain able and ready to apply for payments under the program and intend to apply if the race-based eligibility requirement is declared unconstitutional and enjoined.

24. But for the program's race-based eligibility requirement, Plaintiffs would be in line to receive $25,000 direct cash payments as "direct descendants."

## CLASS ALLEGATIONS

25. Plaintiffs bring this class action under Rule 23 of the Federal Rules of Civil Procedure. The class includes all individuals who are able and ready to apply for the program and are eligible for a $25,000 payment but for the program's race-based eligibility requirement.

26. The class is so numerous that joinder of all members is impractical, as Plaintiffs estimate that, given the 50-year time-period covered by the program and the City's population during that period, the number of members is in the tens of thousands, if not more.

27. There are questions of fact and law common to all class members, as each member is eligible for a $25,000 payment but for the program's race-based eligibility requirement, which violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

28. Plaintiffs' claims are typical of other class members, as Evanston is discriminating against each member on the basis of the member's race, in violation of the Equal Protection Clause to the U.S. Constitution.

29. Plaintiffs fairly and adequately represent the interests of the other class members, as each class member is eligible for a $25,000 payment if Evanston's race-based eligibility requirement is declared unlawful and enjoined.

30. A class action can be maintained because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Evanston. Prosecuting separate actions by individual class members also would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.

31. A class action can be maintained because Evanston has acted on grounds that apply generally to the class, so that the relief sought is appropriate for the class as a whole.

32. A class action can be maintained because the questions of law or fact common to class members predominate over any questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because all class members are subjected to the same Equal Protection violation and, but for Evanston's racial discrimination, all class members would be eligible for a $25,000 payment.

## COUNT I
## (42 U.S.C. § 1983 – EQUAL PROTECTION)

33. Plaintiffs reallege paragraphs 1 through 32 as if fully stated herein.

34. Defendant's use of race as an eligibility requirement for a payment is an express policy or widespread practice so permanent and well-settled that it constitutes a custom or practice for purposes of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

35. Plaintiffs enjoy the right to equal protection of the laws as protected by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

36. Defendant, acting under color of law, is depriving Plaintiffs of their right to equal protection by purposefully and intentionally discriminating against Plaintiffs on the basis of race. Defendant's use of race as an eligibility requirement injures Plaintiffs because it is a barrier that prevents Plaintiffs from participating in and obtaining payments under the program on an equal footing with persons who are able to satisfy Defendant's race requirement. Plaintiffs also are injured by Defendant's use of race as an eligibility requirement because, but for the requirement, Plaintiffs would each be eligible for and in line to receive $25,000 under the program.

37. Defendant's use of race as an eligibility requirement is presumptively unconstitutional. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

38. Defendant's use of race as an eligibility requirement cannot survive strict scrutiny. Among other reasons, Defendant has not identified a compelling governmental interest advanced by its race-based program. Remedying societal discrimination is not a compelling governmental interest. *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 505 (1989); *see also Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 307 ((1978) (opinion of Powell, J.) (describing "societal discrimination" as "an amorphous concept of injury that may be ageless in its reach into the past."). Remedying discrimination from 55 to 105 years ago or remedying discrimination experienced at any time by an individual's parents, grandparents, or great grandparents has not been recognized as a compelling governmental interest. Defendant also has not demonstrated that its actions between 1919 and 1969 constituted a prima facie constitutional or statutory violation of anti-discrimination laws in effect at the time, let alone provide a strong basis in evidence that remedial action is necessary five-plus decades if not more than a century later. *Richmond*, 488 U.S. at 500.

39. Defendant also has not and cannot demonstrate that its use of a race as an eligibility requirement is narrowly tailored. Among other shortcomings, Defendant's use of race as a proxy for experiencing discrimination between 1919 and 1969 does not limit eligibility to persons who actually experienced discrimination during that time period and therefore is overinclusive. Defendant also failed to consider race-neutral alternatives, such as requiring prospective recipients show that they or their parents, grandparents, or great grandparents actually experienced housing discrimination during the relevant time period because of an Evanston ordinance, policy, or procedure, as Defendant requires for the third group of

prospective recipients. Nor did Defendant take into account race-neutral anti-discrimination remedies before adopting its race-based eligibility requirement.

40. Plaintiffs are being irreparably harmed by Defendant's deprivation of their rights to equal protection and will continue to be irreparably harmed unless Defendant's use of race as an eligibility requirement for the program is declared unconstitutional and enjoined.

41. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs, individually and on behalf of all class members, respectfully request that the Court: (1) declare Defendant's use of race as an eligibility requirement for participation in the program to be unconstitutional; (2) enjoin Defendant from using race as an eligibility requirement; (3) award payments to all eligible individuals; (4) award Plaintiffs attorneys' fees and other litigation costs reasonably incurred pursuant to 42 U.S.C. § 1988; and (5) grant Plaintiffs other such relief that the Court deems just and proper.

* * *

**PLAINTIFFS DEMAND A JURY TRIAL**

Dated: May 23, 2024

Respectfully submitted,

/s/ Paul J. Orfanedes
Paul J. Orfanedes (Ill. Bar No. 6205255)
Michael Bekesha (Mass. Bar No. 675787)
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172

/s/ Christine Svenson
Christine Svenson (Ill. Bar No. 6230370)
CHALMERS, ADAMS, BACKER & KAUFMAN, LLC
345 N. Eric Drive
Palatine, IL 60067
Tel: (312) 437-8629

*Counsel for Plaintiffs*