IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland, | )<br>)<br>) Case No. 24-cv-4269<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Hon. John F. Kness, District Judge<br>)<br>) Hon. Gabriel A. Fuentes, Magistrate Judge |
| City of Evanston, | )<br>) |
| Defendant. | )<br>) |

**DEFENDANT CITY OF EVANSTON'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)
AND FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**

Defendant City of Evanston, Illinois ("Evanston") respectfully moves this Court to dismiss the Complaint (ECF No. 1) of Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Evanston also requests leave to conduct very limited jurisdictional discovery, followed by submission of legal memoranda by Plaintiffs and Evanston (collectively, "Parties") regarding this Motion. In support of this Motion, Evanston states the following:

1. Dismissal under Rule 12(b)(1) is proper because Plaintiffs lack standing to sue. The Complaint contains insufficient, conclusory allegations of injury. For example, Plaintiffs assert they are "able and ready" to apply to participate in Evanston's Local Reparations Restorative Housing Program (the "Program"), but they did not apply to participate in the Program and the application period closed in November 2021. Plaintiffs also do not allege they have property in Evanston. As a result, they are not eligible to participate. This means the Plaintiffs have not suffered a concrete and particularized injury and this Court lacks subject matter jurisdiction.

2. Evanston also seeks jurisdictional discovery, as the Complaint lacks fundamental information regarding Plaintiffs' standing, which is their burden to establish. Allowing this limited

1

jurisdictional discovery will confirm that Plaintiffs have no personal stake in the controversy they allege and instead seek to treat this Court as nothing more than an "open forum for citizens 'to press general complaints about the way in which government goes about its business[,]'" which it is not. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024), *quoting Allen v. Wright*, 468 U. S. 737, 760 (1984). Evanston requests limited jurisdictional discovery in the form of the interrogatories attached hereto. After a very brief period of discovery, the Parties can brief this Motion. This approach will permit the Court to adhere to the principle of constitutional avoidance—namely, addressing first whether this Court has the power to hear this case before addressing, if needed, whether the claim has any merit.

3. While Evanston believes that the Court can dismiss the Complaint by determining that no jurisdiction exists, dismissal is also proper under Rule 12(b)(6) because Plaintiffs' Section 1983 claim is untimely.

**BACKGROUND**

4. In 2019 and 2020, after investigating Evanston's role in causing and perpetuating housing discrimination within its borders, Evanston's City Council passed resolutions acknowledging Evanston's past discriminatory housing policies and practices towards its Black residents between 1919 and 1969, and how the effects of this discrimination linger in Evanston. *See* Affidavit of Audrey Thompson ("Thompson Affidavit"), Exhibit 1 hereto, at ¶ 3. To in part address this acknowledged past discrimination and other housing discrimination, Evanston created the Program to provide $25,000 housing-related grants to Evanston residents who suffered the acknowledged discrimination directly, Evanston residents who are the direct descendants of those who suffered the acknowledged discrimination, or Evanston residents who suffered from any other housing discrimination due to Evanston's policies and practices after 1969. *Id.* at ¶ 4.

5. Critically, the Program requires an applicant to specify how the applicant would use the Program's grant. *Id.* at ¶ 5. Under the Program rules, a grant may only be used in four ways: 1) to assist with purchasing real property *in Evanston*; 2) to improve real property *in Evanston*; 3) to pay down a mortgage on real property *in Evanston*; or 4) to pay for other housing-

related expenses in connection with property *in Evanston*. *Id.* Furthermore, an applicant can only apply the grant towards Evanston property that is their principal residence. *Id.*

6. Evanston accepted applications for the Program on a rolling basis between September 21 to November 5, 2021, when the application period closed. *Id.* at ¶ 6. Contrary to the allegation in the Complaint, ECF No. 1 at ¶ 11, Evanston has not reopened the Program's application period since November 2021, and does not have any current plans to reopen applications. Thompson Aff. ¶ 6.

## ARGUMENT

**I. PLAINTIFFS LACK STANDING BECAUSE THEY WERE NOT "ABLE AND READY" TO PARTICIPATE IN THE PROGRAM.**

7. Dismissal under Rule 12(b)(1) is proper if a plaintiff lacks standing to bring his or her claim, depriving the court of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Love Church v. City of Evanston*, 896 F.2d 1082, 1084 (7th Cir. 1990) (citation omitted) ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.").

8. Founded on the principle of the separation of powers, Article III standing is a "bedrock constitutional requirement that this Court has applied to all manner of important disputes." *U.S. v. Texas*, 599 U.S. 670, 675 (2023). And, as the Supreme Court recently reminded potential and current litigants, federal courts cannot preside over general complaints regarding how government entities conduct business without the litigant having a concrete and particularized injury. *All. for Hippocratic Med.*, 602 U.S. at 379.

**A. Plaintiffs Do Not Have A Concrete and Particularized Injury to Satisfy Standing.**

9. To demonstrate standing and establish that a court has subject matter jurisdiction, a plaintiff must show "(1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 775 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal

3

jurisdiction, bears the burden of establishing the required elements of standing." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

10. This Motion focuses on the first element, a concrete and particularized injury, or "[a]s Justice Scalia memorably stated, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *All. for Hippocratic Med.*, 602 U.S. at 379. "Standing also 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id., citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

11. Here, Plaintiffs claim they were injured because they are able and ready to participate in the Program and were deterred from applying by what they perceived to be an insurmountable racial test. ECF No. 1 at ¶ 23. The injury they assert is being deterred from applying for a benefit they believe they were eligible to receive, but for what they believe is a racial requirement they do not satisfy. Yet "[a]n injury in fact must be "concrete," meaning that it must be real and not abstract." *All. for Hippocratic Med.*, 602 U.S. at 381. A deterred applicant has standing only if he or she was both "able and ready" to apply for the benefit if the alleged selection criteria were different. *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

12. Whether Plaintiffs were "able and ready" to apply is a factual issue. Where contested, as here, the Court must resolve the factual issues necessary to conclude it has jurisdiction. Conclusory statements indicating a plaintiff is "able and ready" to apply to a program are insufficient to establish an injury in fact when other aspects of the record contradict the plaintiff's allegations. *Carney v. Adams*, 592 U.S. 53, 61 (2020). In *Carney*, the Supreme Court

found that a plaintiff challenging Delaware's judicial selection criteria did not have standing to bring his claim because his stated intent to apply to be a judge in the future was contradicted by his lack of knowledge about the selection process and lack of the specificity in his plans to apply. *Id.* at 64 (holding a "few words of general intent[,] without more and against all contrary evidence[,]" were not sufficient to establish standing). The general allegations in the Complaint are similarly defective. Thus, when there is persuasive evidence to the contrary, a plaintiff is not "able and ready" to apply just because they say so.

13. As in *Carney*, here, Plaintiffs base their claim of standing on conclusory statements, and believe they have standing just because they say so. Plaintiffs allege they:

> were able and ready to apply for payments under the program and would have applied but for the program's race-based eligibility requirement. Plaintiffs remain able and ready to apply for payments under the program and intend to apply if the race-based eligibility requirement is declared unconstitutional and enjoined.

ECF No. 1 at ¶ 23. Plaintiffs also broadly allege that they meet all the eligibility requirements for the Program other than not being Black. *Id.* at ¶22.

14. However, even if Plaintiffs' general statements were true and complete, they are insufficient to prove standing. Indeed, the Complaint is devoid of any allegations regarding the timing of Plaintiffs' knowledge of the Program, the ability of Plaintiffs' to apply, and how Plaintiffs' could satisfy the geographic limitations of the Program. If the actual requirements of the Program are examined, as they are below, it is clear Plaintiffs lack standing.

15. First, Plaintiffs do not allege sufficiently that they were "able" to apply to the Program. The Program requires that applicants select a housing-related use for the grants (*e.g.*, purchasing a property, paying down a mortgage, or improving an existing property) *in Evanston*. Thompson Aff. ¶ 5. Confirming that any grants awarded would be used for housing-related expenses within the geographic boundaries of Evanston was a key requirement of the Program. *See id.* ¶¶ 3–4. While Plaintiffs allege that their relatives once lived in Evanston, *see* ECF No. 1 at ¶¶ 3–9, nothing in Plaintiffs' Complaint indicates that Plaintiffs live in or own property they

intended to improve in Evanston. Furthermore, Evanston has not found any evidence demonstrating that the Plaintiffs have their principal residence in Evanston.

16. Plaintiffs may have purposefully failed to allege their places of residency because they do not have any property interests in Evanston. *See* Jonathan Bullington and Alex Hulvalchick, *Conservative group files lawsuit over Evanston reparations program*, CHICAGO TRIBUNE (May 31, 2024), https://www.chicagotribune.com/2024/05/24/conservative-group-files-lawsuit-over-evanston-reparations-program/ (reporting that at least two Plaintiffs reside outside of Evanston: Plaintiff Margot Flinn lives in Florida and Plaintiff Stephen Weiland resides in Lake Forest, Illinois).

17. Thus, Plaintiffs were not "able" to participate in the Program if they could not confirm that the grant would be used in relation to a property in Evanston.

18. Second, Plaintiffs do not allege they were "ready" to apply to the Program. The application period for the Program closed on November 5, 2021, nearly 3 years ago. *See* Thompson Aff. ¶ 6. This lawsuit was filed on May 23, 2024. To have been deterred by any Program requirement, each Plaintiff must have been ready to apply on or before November 5, 2021. There is no such allegation in the Complaint. In fact, Plaintiffs wrongly assert that: "Following an initial set of applications, further applications will be accepted on a rolling basis. At no point has Evanston asserted the program is closed." ECF No. 1 at ¶ 11. That allegation is false as the application period has long closed, Evanston has published on the Program's public website that the application period is closed, and there has been no expressed intention to reopen the application period. *See* Thomspon Aff. ¶ 6; EVANSTON LOCAL REPARATIONS, https://www.cityofevanston.org/government/city-council/reparations (last visited Jul. 22, 2024) (noting that "[a]pplications for the [P]rogram were made available from September 21 to November 5, 2021"). Plaintiffs' lack of awareness of the Program during the relevant period means that Plaintiffs were not ready to timely apply to the Program.

19. Therefore, Plaintiffs have not suffered a concrete and particularized injury in fact and have failed to provide sufficient proof to meet their burden to show this Court has jurisdiction.

*See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) ("Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof'" (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936))). Accordingly, dismissal under Rule 12(b)(1) is required.

## II. EVANSTON SEEKS JURISDICTIONAL DISCOVERY TO CONFIRM PLAINTIFFS WERE NOT "ABLE AND READY" TO PARTICIPATE IN THE PROGRAM.

20. When a Rule 12(b)(1) motion raises a factual attack on a plaintiff's standing, a district court may look beyond the pleadings to decide if jurisdiction exists. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the Complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (citation omitted).

21. As demonstrated above, evidence beyond Plaintiffs' Complaint will make clear that Plaintiffs lack standing. As a result, Evanston seeks very limited jurisdictional discovery regarding Plaintiffs': (1) knowledge and eligibility for the Program; (2) property interests; and (3) residency.

22. To confirm that dismissal under 12(b)(1) is appropriate, the Court should grant Evanston leave to take very limited jurisdictional discovery to confirm that Plaintiffs lack standing. In general, "[w]here issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *Woodard v. Quote Storm Holdings*, LLC, No. 23 C 55, 2023 WL 3627719, at *3 (N.D. Ill. May 24, 2023) ("Where the evidence offered by the parties is inconclusive as to subject-matter jurisdiction, a district court can permit limited jurisdictional discovery.").

23. Here, Evanston has established a sufficient showing that Plaintiffs lack standing and this Court lacks subject matter jurisdiction. Evanston has submitted evidence establishing that the Program has an Evanston property-interest requirement and the application period closed in

November 2021. Given that Plaintiffs failed to allege sufficient facts beyond bare conclusory statements that Plaintiffs can meet the requirements of the Program, and Evanston has sufficiently challenged these conclusory allegations, and thus this Court's jurisdiction, limited jurisdictional discovery is warranted.

24. Plaintiffs are in possession of the facts necessary to confirm that they lack standing. Accordingly, Evanston proposes limited jurisdictional discovery requiring Plaintiffs to respond to the proposed interrogatories attached to this Motion as Exhibit 2. Following Plaintiffs' service of complete Answers to these interrogatories, Evanston proposes submitting its brief in support of this Motion within 21 days.

### III. THE COMPLAINT SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) BECAUSE IT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

25. While dismissal is proper based on Plaintiffs' lack of standing, dismissal is also warranted under Rule 12(b)(6) because Plaintiffs' claims, brought under 42 U.S.C. § 1983, are untimely.

26. Since Section 1983 does not include a statute of limitations, courts apply the statute of limitations for personal-injury torts in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Illinois law, personal-injury torts have a two-year statute of limitations, and thus Section 1983 claims filed in Illinois have a two-year statute of limitations period. *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017) ("The appropriate statute of limitations for § 1983 cases filed in Illinois is two years, as set forth in Illinois' personal injury statute[]"); *see also* 735 Ill. Comp. Stat. 5/13-202 ("Actions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued[.]").

27. "[D]ismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839, 842 (7th Cir. 2017).

28. Here, Plaintiffs allege that "at all times relevant" they were deterred from applying to the Program due to the use of race as a consideration in some of the Program's eligibility

requirements. ECF No. 1 at ¶ 23. Plaintiffs thus were allegedly injured beginning no later than the last date on which they could have applied to the Program but were allegedly deterred from doing so, or November 5, 2021.

29. The question of when a Section 1983 cause of action accrues "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). "Aspects of Section 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Wilson v. Groze*, 800 F. Supp. 2d 949, 954 (N.D. Ill. 2011). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.*

30. Accordingly, Plaintiffs' claims began to accrue no later than the last date on which they could have applied to the Program, or November 5, 2021. In the Complaint, Plaintiffs falsely allege that "At no point has Evanston asserted that the program is closed." ECF No. 1 at ¶ 11. However, applications for the Program were only accepted from September 21 to November 5, 2021. *See* Thompson Aff. ¶ 6. Evanston also requests that the Court take judicial notice[1] of the Program's page on Evanston's website, which contains a clear statement that the application period closed on November 5, 2021, and that Evanston has no current plans to reopen applications. *See* EVANSTON LOCAL REPARATIONS, https://www.cityofevanston.org/government/city-council/reparations (last visited Jul. 22, 2024) (noting that "[a]pplications for the [P]rogram were made available from September 21 to November 5, 2021[]" and that "[t]he Reparations Committee has not provided staff with direction to reopen the application [for the Program]."). The authenticity of Evanston's public website cannot be reasonably questioned, and thus taking judicial notice of the facts contained therein is appropriate.

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

31. Since the application process for the Program closed on November 5, 2021, Plaintiffs' claim began to accrue no later than that date. Plaintiffs waited more than two and a half years to bring their claim. ECF No. 1 at ¶ 23. Because the untimeliness of the Complaint is clear from the allegations of the Complaint and other judicially noticeable facts, the Complaint should also be dismissed under Rule 12(b)(6).

IV. **EVANSTON RESERVES ITS RIGHTS TO DEFEND THE PROGRAM AS A JUSTIFIED MEANS OF REMEDYING PAST RACIAL DISCRIMINATION.**

32. As established above, the Court can resolve this case through dismissal based on jurisdictional and timeliness issues alone before the Court gets to the constitutional merits of the Program. And, if there are constitutional and non-constitutional grounds to resolve a case, a court should resolve the case on non-constitutional grounds. *See Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir. 1977) (taking note of the "well-established rule that the federal courts 'will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.'") (quoting *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936)). However, the Program is an appropriate remedy to address the past racial discrimination that Evanston acknowledges it perpetuated against its Black residents. *See* ECF No. 1 at ¶ 10. And, Evanston stands ready to support the Program if the case moves past the jurisdictional and timeliness hurdles here. Indeed, remedying past intentional discrimination is a recognized compelling state interest. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007) (stating that "our prior cases . . . have recognized . . . . the compelling interest of remedying the effects of past intentional discrimination"). Furthermore, the Program is narrowly tailored to provide modest relief to those who (1) directly suffered from this acknowledged intentional discrimination, (2) are the direct descendants thereof, or (3) have evidence they suffered other housing discrimination after 1969. Accordingly, the Program is constitutionally sound. Should this case proceed beyond the issues raised in this Motion, Evanston will address the constitutionality of its Program in future motion practice.

WHEREFORE, Defendant City of Evanston respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and/or 12(b)(6). To facilitate consideration of this Motion, Evanston requests that the Court permit Evanston to take limited jurisdictional discovery to confirm Plaintiffs lack standing via the Interrogatories attached hereto as Exhibit 2.

Dated: July 22, 2024

Respectfully submitted,

CITY OF EVANSTON

By: */s/ Michael T. Brody*
     *One of its attorneys*

Michael T. Brody
Precious S. Jacobs-Perry
Jeffrey P. Salvadore
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel.: (312) 222-9350
Fax: (312) 527-0484
mbrody@jenner.com
pjacobs-perry@jenner.com
jsalvadore@jenner.com

Alexandra B. Ruggie
Matthew Slodowy
CITY OF EVANSTON
2100 Ridge Ave
Evanston, IL 60201
Tel.: (847) 866-2937
aruggie@cityofevanston.org
mslodowy@cityofevanston.org

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Michael T. Brody