**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARGOT FLINN, CAROL JOHNSON, STASYS NEIMANAS, BARBARA REGARD, HENRY REGARD, and STEPHEN WEILAND, | ) ) ) ) ) | Case No. 24-cv-4269 |
| Plaintiffs, | ) ) | Hon. John F. Kness, District Judge |
| v. | ) ) ) | Hon. Gabriel A. Fuentes, Magistrate Judge |
| CITY OF EVANSTON, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT CITY OF EVANSTON'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS AND
FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**

The City of Evanston's Motion to Dismiss and for Leave to Take Jurisdictional Discovery (the "Motion") should be granted. Plaintiffs' Opposition (the "Opposition") attempts to engage with the merits of the case, but it fails to overcome the Complaint's jurisdictional defects. Plaintiffs do not directly address their lack of standing and the untimeliness of their Complaint. They could have responded to those issues and addressed Evanston's request for jurisdictional discovery by answering Evanston's proposed interrogatories, demonstrating they owned or had sought to own property in Evanston in 2021, and establishing they were aware of Evanston's Local Reparations Restorative Housing Program ("the Program") during the relevant time period. Instead, Plaintiffs' attorney submitted his own affidavit which attached a number of irrelevant documents in a failed attempt to invent factual

disputes to distract from Plaintiffs' lack of standing and the Complaint's untimeliness.

The Court should not entertain Plaintiffs' misdirection. The Complaint should be dismissed without leave to amend as an Article III court is not a proper forum for Plaintiffs to address their untimely policy disagreements with the Program. This Court may only resolve timely-filed cases where the plaintiff has a concrete and particularized injury. This Court cannot provide the advisory opinion the Plaintiffs seek regarding what claims, if any, they could have in the future if the Program's application period reopens.

Plaintiffs do not have standing to challenge the Program. Their standing depends on their assertion that they were deterred from applying to the Program because they assert race was used as a program selection criterion. ECF No. 1 at ¶ 23. To bring a claim based on such a theory, Plaintiffs admit they must have been "able and ready" to apply to the Program if race was not used as a selection criterion. ECF No. 20 at 1. To be "able and ready" to apply means Plaintiffs must have been able to apply truthfully to the Program before November 2021 when applications were last accepted. This means Plaintiffs would need to have known about the Program in 2021 and had or were seeking to acquire an interest in real property in Evanston at the time, which Plaintiffs do not allege. If needed, very limited jurisdictional discovery will confirm Plaintiffs' lack of standing.

In addition, Plaintiffs cannot dispute their claim is untimely. In a failed attempt to get around this issue, Plaintiffs assert continuing injury theories. ECF

No. 20 at 13–14. However, Plaintiffs' arguments fail because their claim began to accrue no later than when the opportunity to apply to the Program closed in November 2021. Plaintiffs cannot dispute that the application period closed in November 2021, or that applications have not been accepted since that time, far more than two years ago. As a result, Plaintiffs' Complaint was filed outside the two-year statute of limitations and any request to amend the Complaint would be futile.

## ARGUMENT

**I. DISMISSAL IS PROPER UNDER RULE 12(b)(1) BECAUSE PLAINTIFFS WERE NOT "ABLE AND READY" TO APPLY TO THE PROGRAM AND THEREFORE LACK STANDING.**

Plaintiffs bear the burden of establishing their standing. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). And, Plaintiffs concede that to have standing to bring their claim, they must have a concrete and particularized injury in fact. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). Plaintiffs also concede that to challenge the Program as an allegedly deterred applicant, they must have been "able and ready" to apply to the Program if the selection criteria no longer included race. *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

In the Opposition, Plaintiffs argue that they have a particularized injury because they were deterred from applying to the Program because Evanston used race as a selection criterion for the Program. ECF No. 20 at 13. However, this generalized grievance does not meet the specific, particularized injury requirement of standing because the Program had other application criteria, which Plaintiffs do

3

not satisfy. As *Northwestern Florida* makes clear, standing of a deterred applicant to challenge a government program is dependent on a plaintiff specifically being able and ready to apply should the challenged selection criteria not exist, and the plaintiff has to have the ability to meet all other criteria. 508 U.S. at 666. Here, despite their conclusory statements, Plaintiffs fail to allege that they were (1) able to meet *all* of the other requirements to apply to the Program, and (2) ready to exploit the opportunity to do so in 2021. Accordingly, dismissal is proper under Federal Rule of Civil Procedure 12(b)(1) because without standing, this Court lacks subject-matter jurisdiction over Plaintiffs' claims. Fed. R. Civ. Pro. 12(b)(1).

### A. To Be "Able" to Apply to the Program, Plaintiffs Must Have an Actual or Intended Real Property Interest in Evanston.

Plaintiffs have not pleaded that they were able to truthfully apply to the Program. To qualify for the Program, an applicant had to attest to having an interest in real property in Evanston, or an intention to acquire such an interest. ECF No. 13-1, Ex. 1 Affidavit of Audrey Thompson ("Thompson Affidavit") at ¶ 6. Plaintiffs do not allege such an interest. Plaintiffs attempt to muddy the waters with respect to this requirement by asserting Evanston is "conflat[ing] the program's eligibility requirements with the available benefits." ECF No. 20 at 4. They contend that they are able to participate in the Program because, but for race, they met all the other criteria of the direct descendant beneficiary category of the Program. ECF No. 20 at 4; ECF No. 1 at ¶¶ 3–8, 22. For the reasons discussed below, the allegations in the Complaint do not support Plaintiffs' conclusions.

### 1. Applicants for the Program were required to have or seek a property interest in Evanston.

During the 2021 application period, which is when Plaintiffs would have had to have been deterred from applying to the Program, the Program required applicants to be able to use the funds they received for a housing-related purpose *in Evanston*. *See* Thompson Aff. at ¶ 5; *see also* ECF No. 20-1, Bekesha Aff. at 15 (containing sections of the Program's initial draft guidelines describing how an "approved Applicant may qualify for up to $25,000 for any benefit described" in a previous section listing the three available housing-related benefits); *Id.* at 16 (requiring the property that the Program recipient's funds go towards be "located within the current city limits of Evanston, Illinois"). The application that Plaintiffs alleged they were deterred from completing made clear: funds may only be used for housing-related expenses in Evanston. *See id.* at 27 ("Eligible applications may receive up to $25,000 in funds towards the purchase of a home, home improvements towards an existing home, and/or mortgage assistance for a property within the boundaries of Evanston, Illinois").

Recognizing they did not meet the real property in Evanston requirement, Plaintiffs contend that the implementation of certain changes to *how the applicants received the benefit from the Program*, which was made long after the application period had closed, somehow altered the requirement that applicants have or seek a property interest in Evanston. ECF No. 20 at 8–10. It did not. The change, which only applied to those who timely applied to the Program, related solely to how a timely and qualified applicant could receive their benefit under the Program. It did not

change the Program's requirements or reopen the application period. To be eligible to select this alternative means of receiving the benefit of the Program, an applicant would have had to have submitted an application to the Program between September 21 and November 5, 2021 that truthfully asserted they had a property interest in Evanston or would seek to obtain one. Since Plaintiffs make no such allegations, they were not *able* to apply to the Program during the relevant time period.

**2. Establishing a property interest in Evanston is a prerequisite to standing.**

Whether Plaintiffs were able to participate in the Program is at the heart of establishing Plaintiffs' standing to bring the Complaint. *Northwestern Fla.*, 508 U.S. at 666. And, standing must be addressed before addressing the merits of a complaint. *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990); *see also In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, No. 23 C 669, 2024 WL 726838, at *4 (N.D. Ill. Feb. 21, 2024) ("[S]tanding . . . is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.").

The Motion focuses squarely on whether Plaintiffs met the requirements to truthfully apply to the Program. This Court need not, and should not, address the merits of the Program prior to first addressing whether Plaintiffs have standing to bring the Complaint. *Id.* Where, as here, a defendant attacks the factual basis for a plaintiff's standing, Courts are empowered to look beyond the pleadings to determine whether a plaintiff has standing or whether dismissal under Rule 12(b)(1) is required. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); Fed.

6

R. Civ. Pro. 12(b)(1). Evanston has demonstrated that the Program application had a real property in Evanston requirement, *see* Thompson Aff. at ¶ 6, which the Plaintiffs do not allege they met. Instead of asserting that they met this requirement, Plaintiffs assert that an inquiry into whether they met the Program's real property in Evanston requirement should not be allowed at this stage of the case. ECF No. 20 at 1–2. However, information related to whether the Plaintiffs satisfied this criterion is critical to assessing whether the Plaintiffs have standing to assert a claim at all. Thus, the Court must determine whether Plaintiffs were actually able to meet all requirements of the Program in order to assess whether the Court has jurisdiction.

Courts have held that whether a plaintiff is able to receive the benefits of a program they are attempting to challenge directly bears on their standing. *See, e.g.*, *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 923 (N.D. Ill. 2012) ("[I]f an applicant could not have obtained the desired benefit even in the absence of discrimination, 'such an applicant lacks the requisite personal stake in the outcome' of the proceeding to have standing." (quoting *Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir.2007))). Accordingly, being "able" to participate in a program, and thus having standing to challenge the program, means being both able to satisfy the application requirements of the program, but for the challenged consideration, and being able to participate in the program should their application be approved. Plaintiffs do not allege they met all of the Program's criteria, and in fact at least two plaintiffs appear to live outside of Evanston. *See* Jonathan Bullington and Alex Hulvalchick, *Conservative group files lawsuit over Evanston reparations program*, CHICAGO TRIBUNE (May 31, 2024),

7

https://www.chicagotribune.com/2024/05/24/conservative-group-files-lawsuit-over-evanston-reparations-program (last visited Oct. 2, 2024) (reporting that at least two Plaintiffs do not live in Evanston). And, as Evanston demonstrated in the Motion, under binding Supreme Court precedent, conclusory statements are insufficient for standing when the evidentiary record contradicts them. *Carney v. Adams*, 592 U.S. 53, 61 (2020).

Despite Plaintiffs' contentions, *Carney* remains on point. The Supreme Court in *Carney* explained that the plaintiff could only survive a standing challenge if he proved that he is "*able* and ready" to apply to become a judge in Delaware in the foreseeable future if the state changed their judicial selection criteria. *Carney*, 592 U.S. at 60 (emphasis added). Examining the available evidence, the Court found that, despite his statements to the contrary, the plaintiff had not shown he was "able and ready" to apply to be a judge and had "not sufficiently differentiated himself from a general population of individuals affected in the abstract by the legal provision he attacks." *Id.* at 64; *see also Training Inst., Inc. v. City of Chicago*, No. 95 C 4991, 1996 WL 31180, at *3 (N.D. Ill. Jan. 24, 1996), *aff'd*, 937 F. Supp. 743 (N.D. Ill. 1996) (rejecting standing for plaintiff city contractor who challenged an ordinance where the court concluded the contractor was never subjected to the ordinance). While Plaintiffs attempt to differentiate the factual circumstances of *Carney*, ECF No. 20 at 4–5, the same legal principles apply to this action and should lead to the same result. Plaintiffs were not able to meet all the requirements to participate in the Program. To permit them to sue would, as the Supreme Court declared in *Carney*, "weaken the

longstanding legal doctrine preventing this Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law." *Carney*, 592 U.S. at 64.[1]

### B. To Have Been "Ready" to Apply to the Program, Plaintiffs Must Have Been Aware of the Program in 2021.

The Program's application period was September 21 to November 5, 2021, and it has not been reopened. Thompson Aff. at ¶ 6. Plaintiffs do not allege that they were aware of the Program during that period. Instead, Plaintiffs attempt to distract the Court from their lack of readiness to apply to the Program in 2021 by alleging, in an apparent contradiction,[2] that both the Program's application period has not closed, and simultaneously will reopen again soon. ECF No. 20 at 10–11. These allegations are not supported and require many leaps from a collection of irrelevant

---

[1] Plaintiffs' citation to *Boim* is misguided. ECF No. 20 at 5. Evanston is not challenging the merit of the Complaint in the Motion. Unlike in *Boim*, this Court need not examine the merits of the Complaint to determine if Plaintiffs have standing. The Program had requirements that Plaintiffs do not allege they satisfy. In addition, the plaintiffs' injury in *Boim* was not in dispute. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 554 (7th Cir. 2021). Here, Evanston challenges Plaintiffs' ability to be "able and ready" to apply to the Program. Plaintiffs must meet their burden at this stage of the litigation, which they have not met, before the Court can consider the merits of the Program. Accordingly, the Court should follow *Carney* and find Plaintiffs lack standing.

[2] Asserting that at some undetermined point in the future Evanston may reopen the Program does not get Plaintiffs over the standing obstacle. To have standing, Plaintiffs must allege an injury that "is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016). Plaintiffs' arguments that Evanston will reopen applications for the Program using the same application criteria at some undetermined date in the future is based on conjecture and hypotheticals. There is simply no program for the Plaintiffs to stand ready to apply to and this has been the case since November 2021.

documents Plaintiffs' counsel attaches to the Opposition.

The fact remains, and Plaintiffs admits (*see* ECF No. 20 at 11), that the Program's application period closed and there are no plans to reopen the Program. *See* Thompson Aff. at ¶ 6. That applicants could submit applications on a rolling basis during the open period does not extend the period to apply. *Id.* Plaintiffs do not assert that they were aware of the Program during the relevant time period in 2021, and therefore could not have been "ready" to apply to the Program. They also cannot stand ready to apply to the Program now (or at any time after November 2021) because there is nothing for them to apply to. Indeed, Evanston's website makes this apparent. As has been true for nearly three years, there is no way to submit an application, and there is no indication from Evanston that applications will be made available for submission again on any specific date. *See* EVANSTON LOCAL REPARATIONS, https://www.cityofevanston.org/government/city-council/reparations (last visited Oct. 2, 2024) (noting that "[a]pplications for the [P]rogram were made available from September 21 to November 5, 2021[]" and that "[t]he Reparations Committee has not provided staff with direction to reopen the application [for the Program].").

### C. Plaintiffs' Request for Provisional Standing Should be Rejected.

Plaintiffs' alternative argument that the Court should "provisionally find standing" is without merit. *See* ECF No. 20 at 6–7. Provisional standing may be appropriate where disputes over standing and merits are inseparable, and the Court would benefit from a fuller factual record. *Markle v. Drummond Advisors, LLC*, No.

10

19-CV-2789, 2020 WL 777272, at *4 (N.D. Ill. Feb. 18, 2020). No such dispute exists here given the dearth of allegations regarding Plaintiffs' ability to be "able and ready" to apply to the Program in 2021. And, despite Plaintiffs' attempts to save the Complaint, the Court must first determine whether Plaintiffs have standing, which the Court has the ability to do on the current record or with limited jurisdictional discovery. As such, provisionally finding standing is inappropriate.

## II. LIMITED JURISDICTIONAL DISCOVERY WILL CONFIRM PLAINTIFFS' LACK OF STANDING.

Limited jurisdictional discovery in the form of the interrogatories attached to the Motion will resolve the standing issues to the extent the Court believes there is any discovery needed. To be "able and ready" to apply to the Program, applicants must meet all the Program's requirements but for the challenged criteria. Here, to apply to the Program, an individual must meet the real property in Evanston criteria that Plaintiffs cannot apparently satisfy. Thompson Aff. at ¶ 6.

Limited jurisdictional discovery will confirm that Plaintiffs did not have a property interest in Evanston in 2021, did not have an interest in acquiring an interest in real property in Evanston in 2021, and therefore would have been unable to truthfully apply to the Program. Plaintiffs could have alleged or otherwise demonstrated they met this Program requirement but failed to do so. Limited jurisdictional discovery will also likely show that Plaintiffs were not aware of the Program in 2021, and therefore were not ready to apply to the Program during the application period. Again, they could have alleged or showed they had knowledge of

11

the Program in 2021, but they failed to do. The failure to support their conclusory assertions in the Complaint is telling.

While not agreeing to very limited discovery relevant to the jurisdictional dispute, Plaintiffs ask for other broader discovery. ECF No. 20 at 12. The Court should reject Plaintiffs' request because it extends beyond the threshold question of whether Plaintiffs have standing, which is Plaintiffs' burden to establish now. *Lee*, 330 F.3d at 468. Since Plaintiffs have failed to meet their burden, the Complaint should be dismissed, but if any discovery is needed, limited jurisdictional discovery focused solely on Plaintiffs' standing would be appropriate here.

## III. THE COMPLAINT IS UNTIMELY AND SHOULD BE DISMISSED UNDER RULE 12(b)(6).

The statute of limitations begins to run on the day on which the plaintiff first possesses a claim. *Wilson v. Groze*, 800 F. Supp. 2d 949, 954 (N.D. Ill. 2011). Plaintiffs claim that they were wronged because they were deterred from applying to the Program by an alleged race-based eligibility requirement. *See* ECF No. 1 at ¶ 23. If that claim is truthful, they were able to assert it on November 5, 2021. Once the application period closed on November 5, 2021, no new aspect of the Program affected their ability to apply. Nor did any program requirement affect their ability to claim a benefit. Instead, had they applied after November 5, 2021, they would be denied because they were late. Insofar as these Plaintiffs are concerned, events after November 2021 have no bearing on the reason they lack standing. Nor do events after November 2021 affect their ability to have made a claim against the Program in November 2021. And, Plaintiffs concede the statute of limitations is two years.

12

Plaintiffs filed this lawsuit in 2024, more than two years after they possessed the claim they now seek to vindicate. Thus, their Complaint is untimely.

Plaintiffs attempt to save the Complaint by asserting erroneous legal theories. First, they assert their claim did not accrue until Evanston considered applications submitted by other, similarly situated applicants. ECF No. 20 at 13. But, as discussed above, this theory is inconsistent with their claim. They allege they were deterred from applying to the Program, not that they applied to the Program and their applications were wrongly rejected. ECF No. 1 at ¶ 23. Once the application period closed in November 2021, they possessed whatever claim they could now have. They cannot point to a change in the Program after the application period closed in 2021, which only applied to timely applicants, to allege that the change caused their injury. The have no legally cognizable injury because they were no longer "able and ready" to apply. To the contrary, their claim accrued no later than November 5, 2021, nearly two and a half years before Plaintiffs filed their lawsuit.

Second, Plaintiffs' invocation of the "continuing violation" doctrine does not save their claim. That theory is limited to circumstances in which the exact timing of a violation is difficult to pin down and the allegedly unlawful practice resulted in sustained injuries to the plaintiffs. *See* ECF No. 20 at 14; *Lewis v. City of Chicago*, No. 98C5596, 2000 WL 690313, at *4, 7 (N.D. Ill. May 25, 2000). The doctrine is not about a harm that continues, "but about a cumulative[ ] violation" that, when taken in the aggregate, becomes an actionable claim. *Limestone Dev. Corp. v. Vill. of Lemont*, Ill., 520 F.3d 797, 801 (7th Cir. 2008). Even under that theory, subsequent injuries do

13

not toll the statute of limitations on the original, particularized injury. *Id*. Plaintiffs assert they suffered continuing injuries that make their claim timely. *See* ECF No. 20 at 13–15. However, each of the injuries Plaintiffs assert refer to actions or changes made to the Program long after the period in which they, or anyone else, could have applied to the Program. And, as discussed above, generalized grievances about the Program do not constitute an injury. Plaintiffs complain that a racial test deterred them from applying to be "direct descendants." ECF No. 1, ¶¶ 23–24. That claim— if meritorious—accrued on or before November 5, 2021, and nothing that happened at a later date gives them a new claim. This action is similar to a normal tort claim: the alleged wrong occurred at a specific time, at which point Plaintiffs' claims accrued. A later manifestation of harm does not reset the statute of limitations for the original claim. Plaintiffs cannot get around the fact that their claim accrued on November 5, 2021, and the limitations period closed on November 5, 2023. Plaintiffs' claim is untimely, and dismissal is proper under Rule 12(b)(6).

## IV. ANY AMENDMENT OF PLAINTIFFS' COMPLAINT WOULD BE FUTILE.

In a footnote, Plaintiffs request that the Court grant them permission to amend the Complaint to plead additional facts related to their "ongoing and imminent injuries." ECF No. 1 at 1, n. 1. Plaintiffs do not inform the Court of what additional facts could salvage their claim, beyond a vague reference to a single committee meeting. *Id.* However, a new injury cannot revive a stale claim. *Limestone Dev. Corp.*, 520 F.3d at 801 ("The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled

by subsequent injuries."). The Court should reject this request because any attempt at amendment would be futile. As discussed above, Plaintiffs cannot assert a particularized injury after the timeframe in which they had the ability to be "able and ready" to apply to the Program. Given that the timeframe for this alleged injury ended on November 5, 2021, and Evanston has no demonstrated plan to reopen applications on any specific date, any Section 1983 claim that Plaintiffs attempt to bring will run into the same timeliness issue. While there is normally a liberal standard for amending a complaint under Federal Rule of Civil Procedure 15(a)(2), a court can deny leave to amend where it is certain from the face of the complaint that any amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015). As a matter of judicial economy, the Court should reject any futile attempt by Plaintiffs to salvage the Complaint.

WHEREFORE, Defendant City of Evanston respectfully requests that the Court grant its Motion and dismiss the Complaint pursuant to Rules 12(b)(1) and/or 12(b)(6), or, in the alternative, permit Evanston to take limited jurisdictional discovery to confirm that Plaintiffs lack standing.

Dated: October 2, 2024

Respectfully submitted,

CITY OF EVANSTON

By: */s/ Michael T. Brody*
  *One of its attorneys*

Michael T. Brody
Precious S. Jacobs-Perry
Jeffrey P. Salvadore
JENNER & BLOCK LLP

15

353 N. Clark Street
Chicago, Illinois 60654-3456
Tel.: (312) 222-9350
Fax: (312) 527-0484
mbrody@jenner.com
pjacobs-perry@jenner.com
jsalvadore@jenner.com

Alexandra B. Ruggie
Cynthia Grandfield
Matthew Slodowy
CITY OF EVANSTON
2100 Ridge Ave
Evanston, IL 60201
Tel.: (847) 866-2937
aruggie@cityofevanston.org
cgrandfield@cityofevanston.org
mslodowy@cityofevanston.org

*Counsel for Defendant*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 2, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Michael T. Brody