IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGOT FLINN, *et al.*, | ) | |
| | ) | |
|       *Plaintiffs*, | ) | Case Number: 24-cv-04269 |
| | ) | |
| v. | ) | Hon. John F. Kness, District Judge |
| | ) | |
| CITY OF EVANSTON, | ) | |
| | ) | |
|       *Defendant*. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland, by counsel and pursuant to the Court's February 8, 2025 minute order, respectfully submit this response to Defendant City of Evanston's notice of supplemental authority in support of its motion to dismiss and for leave to take jurisdictional discovery.

1. Defendant's supplemental authority, *Hierholzer v. Guzman*, Case No. 24-1187, 125 F.4th 104, 2025 U.S. App. LEXIS 111 (4th Cir. Jan. 3, 2025), adds nothing to the arguments already presented by the parties.

2. Defendant appears to cite *Hierholzer* for the unremarkable proposition that a party challenging race-based government action like Evanston's first-in-the-nation "Blacks only" reparations program must plead facts showing that the party satisfies the program's race-neutral requirements. Def's Notice of Supp. Authority (ECF No. 27) at 1.

3. Plaintiffs plainly did so. Among other facts, Plaintiffs expressly pled that they are at least 18 years of age, that they have at least one parent, grandparent, or great-grandparent who lived in Evanston between 1919 and 1969, and that that ancestor was at least 18 years of age at

the time. Compl. (ECF No. 1) at ¶¶ 3-8. These key allegations are on all fours with the program's core race-neutral eligibility requirements. *Id.* at ¶ 14. Plaintiffs also pled facts demonstrating that the program is continuing and indeed is still ramping up. *Id.* at ¶¶ 10, 17-21. Not only has Evanston expressly stated that additional applications will be accepted "on a rolling basis" after an initial round of applications were made available in late 2021, but at no point has the city asserted that the program is closed. *Id.* at ¶ 11. Evanston even committed additional funds to the program—more than enough to pay all currently approved applicants—and has repeatedly told the public to stand by for information about when new applications will be accepted. *Id.* at ¶ 10; Plfs' Opp. (ECF No. 20) at 11. Plaintiffs pled further that Evanston expanded the program as recently March 2023 to include a direct cash payment option, obviating any argument that an applicant must reside or own property in Evanston or intend to purchase property in Evanston to be eligible. Compl. (ECF No. 1) at ¶ 17; Plf's Opp. (ECF No. 20) at 7-10. The only eligibility requirement Plaintiffs cannot satisfy is their race. Compl. (ECF No. 1) at ¶¶ 4-8. "But for the program's race-based eligibility requirement, Plaintiffs would be in line to receive $25,00 direct cash payments as 'direct descendants.'" *Id.* at ¶ 24.

    4.      Defendant's response to Plaintiffs' well-pled allegations is to try to refute its own public statements about the program. But *Heirholzer* has no bearing on how to treat factual disputes—or even obvious, self-serving attempts to create the appearance of factual disputes—on Rule 12(b)(1) motions to dismiss. *See, e.g.*, *Crawford f. United States*, 796 F.2d 924, 929 (7th Cir. 1986) (denying a motion to dismiss where a jurisdictional issue was "so bound up with the merits" that a full trial was necessary to resolve the issue); *see also Boim v. Am. Muslims for Palestine*, F.4th 545 (7th Cir. 2021); *Craftwood II Inc. v. Generac Power Sys.*, 920 F.3d 479 (7th Cir. 2019). *Heirholzer* also says nothing about what it means for a plaintiff to be "ready and

able" to apply to a challenged program in the reasonably foreseeable future or when such a plaintiff suffers a cognizable injury. *Cf. Carney v. Adams*, 592 U.S. 53 (2020). It does not change or even elucidate any aspect of the law of standing.

5. *Heirholzer*'s facts also do nothing to refute Plaintiffs' argument. If anything, the opposite is the case.

6. In *Hierholzer*, a business owner and his business challenged a Small Business Administration ("SBA") business development program. Among other requirements, a eligible small business must be "owned and controlled by one or more 'socially and economically disadvantaged' individuals. *Hierholzer*, 2025 U.S. App. LEXIS 111 at **3-4 (citing 15 U.S.C. §§ 637(a)(4)(A), (7)(A) and 644(g)(1)(A)(i), (iv)).

7. According to the program's authorizing statute, a socially disadvantaged individual is a person "who [has] been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." *Hierholzer*, 2025 U.S. App. LEXIS 111 at *4 (quoting 15 U.S.C. § 637(a)(5)). The SBA's implementing regulations "provide that members of certain designated groups, including 'Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, Subcontinent Asian Americans, and members of other groups designated from time to time by the SBA' are entitled to a rebuttable presumption of social disadvantage." *Hierholzer*, 2025 U.S. App. LEXIS 111 at *4 (citing 13 C.F.R. § 124.103(b)(1)). The regulations also provide that "individuals who are not members of one of these groups may show disadvantage" by submitting certain evidence demonstrating that they have been "negatively impacted" by their claimed social disadvantage. *Hierholzer*, 2025 U.S. App. LEXIS 111 at **4-6 (citing 13 C.F.R. §§ 124.103(c)(1)-(2)).

8. Also according to the program's authorizing statute, an economically disadvantaged individual is a person "whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." *Hierholzer*, 2025 U.S. App. LEXIS 111 at **6-7 (quoting 15 U.S.C. § 637(a)(6)(A)).

9. In their complaint, the *Hierholzer* plaintiffs pled that the plaintiff-owner is of German and Scottish descent and therefore is not a member of a group that enjoys a presumption of social disadvantage. *Hierholzer* Complaint, attached as Exhibit A, at ¶ 47. They also pled facts alleging that the plaintiff-owner is socially disadvantaged. *Id.* at ¶¶ 56-61. They did not plead facts alleging that the plaintiff-owner is economically disadvantaged. *See id. generally*.

10. Based on these allegations, the *Hierholzer* plaintiffs claimed they were being discriminated against on the basis of race because they "would have been accepted into the 8(a) Program without having to prove [the plaintiff-owner's] social disadvantage if he belonged to one of the favored races." *Id*. at ¶ 64.

11. Both the district and appellate courts concluded that the plaintiffs did not have standing because they failed to allege that they were "able and ready" to participate in the SBA program. *Hierholzer*, 2025 U.S. App. LEXIS 111 at *21. As the Fourth Circuit recognized, to participate in the program, an individual must demonstrate both social and economic disadvantage. *Id*. at *22. The complaint "includes three pages dedicated to explaining their claimed bases for social disadvantage (physical and psychological disabilities) but does not contain any pleading with regard to [the plaintiff-owner's] economic disadvantage." *Id*. As a result, the plaintiffs were "ineligible for the program because of their failure to allege economic disadvantage." *Id*. at *27.

12. Unlike the instant matter, the *Hierholzer* plaintiffs did not allege that they satisfied the challenged program's race-neutral eligibility requirements. Also, unlike this case, there was no factual dispute in *Hierholzer* about those requirements. The Fourth Circuit did not address—nor was it asked to address—how or even whether to resolve such a dispute on a Rule 12(b)(1) motion to dismiss. If anything, *Hierholzer* supports Plaintiffs because it confirms that a plaintiff challenging a race-based government program on Equal Protection grounds must allege facts that satisfy the challenged program's race-neutral eligibility requirements, which Plaintiffs have done. At a minimum, a dispute of fact exists about these requirements that is so bound up with the merits of Plaintiffs' claim that the Court should provisionally find standing and reserve the ultimate determination until trial.

Dated: February 24, 2025

Respectfully submitted,

/s/ Michael Bekesha
Paul J. Orfanedes (Ill. Bar No. 6205255)
Michael Bekesha (Mass. Bar No. 675787)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel: (202) 646-5172

Christine Svenson
(Ill. Bar No. 6230370)
CHALMERS, ADAMS, BACKER & KAUFMAN, LLC
345 N. Eric Drive
Palatine, IL 60067
Tel: (312) 437-8629

*Counsel for Plaintiffs*