IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGOT FLINN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case Number: 24-cv-04269 |
| | ) | |
| v. | ) | Hon. John F. Kness, District Judge |
| | ) | |
| CITY OF EVANSTON, | ) | Hon. Gabriel A. Fuentes |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO BIFURCATE**

Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard,

and Stephen Weiland, by counsel, respectfully submit this opposition to Defendant City of

Evanston's Motion to Bifurcate Discovery.

**I.      Introduction.**

This Court has already rejected the central premise of Evanston's bifurcation motion –

that discovery focused on the city's purported statute of limitations defense can be separated

from discovery about the merits of Plaintiffs' Equal Protection challenge to Evanston's flagrantly

unconstitutional, racially discriminatory reparations program.  In denying Evanston's Rule

12(b)(1) motion, the Court found the same factual issues Evanston says are relevant to its statute

of limitations claim are "deeply intertwined" with disputes about the program's mechanics.  ECF

No. 37 at 7.  That ruling is now law of the case, and Evanston offers no reason why the Court

should reconsider it.  The city seeks a second bite of the apple in the guise of bifurcation.

Bifurcation will not achieve any of the efficiencies Evanston promises.  It will not

simplify discovery.  Indeed, much of what Plaintiffs relied on in opposing Evanston's Rule

12(b)(1) motion and would continue to rely on should Evanston pursue its baseless statute of limitations defense is the city's own official public statements and actions about the program. While Plaintiffs' need for discovery to confirm these public statements and actions is obvious, it is not at all apparent why the city even needs discovery into its own acceptance and processing of applications and its own implementation of the program.[1]  ECF No. 45 at 5.  By contrast, bifurcation would severely prejudice Plaintiffs, who would be forced to rebut Evanston's statute of limitations defense – baseless as it is – on a one-sided, front-loaded record.  Bifurcation also would significantly delay a ruling on the merits of the first-in-the-nation program because it necessarily entails an initial round of summary judgment motions before any merits discovery and what undoubtedly will be a second round of summary judgment motions.  The city's blatantly racially discriminatory program would continue unabated in the interim, causing substantial prejudice to Plaintiffs, the public interest, and the rule of law generally.  Finally, bifurcation also would be pointless should the United States' motion to intervene be granted. The case would proceed in any event.  Evanston's motion should be denied.

II.     **Factual Background.**

As Plaintiffs alleged in their complaint and demonstrated in their opposition to Evanston's motion to dismiss, the city has promised since the program's very start that after, "initial applications" were "accepted, reviewed, and funded," additional applications "will be accepted on a rolling basis."  *See* Official Program Guidelines (Final Version), attached as Exhibit 1, at 6; *see also* ECF No. 21 at ¶ 3.  These official guidelines were incorporated by reference into the city council resolution creating the program.  *See* Resolution 37-R-21, attached

---

[1]     While Evanston also claims it needs discovery about Plaintiffs' knowledge of the program, it would seem reasonable that Plaintiffs' knowledge is likely to have been based on the city's own public statements and actions about the program.

as Exhibit 2, at 2; *see also* ECF No. 21 at ¶ 3.  Neither the guidelines nor the resolution say anything about a final date for accepting applications or for the program's termination.  *Id.*  And while Evanston's website stated that applications would be made available from September 21 to November 5, 2021, its plain language did not say anyone who did not apply by November 5, 2021 would be ineligible to apply at a later date.  ECF No. 13 at 6.  Indeed, its promise of rolling applications directly refutes any such claim.  To date, Evanston has never retracted that promise or otherwise declared that the program is permanently closed to new applicants.

In fact, Evanston's official statements and actions demonstrate the opposite is the case.  It committed an additional $10 million to the program in November 2022 (ECF No. 42 at 4-5), more than enough to pay all applicants in the current round and leaving funds left over for new applicants in the rolling application period.  ECF No. 20 at 11.  In March 2023, the city council also passed a resolution adding a direct cash-payment option for receiving the $25,000 the program offers.[2]  *See* Resolution 27-R-23, attached as Exhibit 3; *see also* ECF No. 21 at ¶ 8.  It has encouraged persons who did not previously "sign up for reparations" to join a listserv for updates, and, as recently as September 2024, a city council and reparations committee member publicly reiterated that a new round of applications will open once the first round is completed.  ECF No. 20 at 11.

### III.    Legal Standard.

Because bifurcation risks additional delay, it "has remained the exception and not the rule."  *Marshall v. Grubhub Inc.*, Case No. 19 C 3718, 2022 U.S. Dist. LEXIS 66998, at *8, 2022 WL 1055484 (N.D. Ill.  April 5, 2022) (quoting *Tate v. City of Chicago*, Case No. 18-cv-

---

[2]    Nowhere does the 2023 resolution even suggest that the direct cash option is limited to current applicants and or that it will not be available to new applicants in the rolling application period.

7439, 2019 U.S. Dist. LEXIS 84272, 2019 WL 2173802 (N.D. Ill. May 20, 2019)). "[I]t is clear that in most instances, regular – that is, unbifurcated – discovery is more efficient." *Id.* at *9 (quoting *Cent. Transp. Int'l, Inc. v. Gen. Elec. Co.*, No. 3:08CV136-C, 2008 U.S. Dist. LEXIS 103456, 2008 WL 4457707 (W.D.N.C. Sept. 30, 2008)). "Bifurcation is warranted where it promises to promote efficiency and economy without working substantial prejudice." *Id.* (quoting *Christian v. Generation Mortg. Co.*, Case No. 12-cv-5336, 2013 U.S. Dist. LEXIS 69855, 2013 WL 2151681 (N.D. Ill. May 16, 2013)). That cannot be said here.

## IV.     Argument.

### A.     Evanston's purported need for the discovery is illusory, and the discovery it seeks is not separable from the merits.

Evanston claims it needs discovery related to: (1) demonstrating that no applications for the program were accepted after the initial application period, which Evanston appears to define as September 21, 2021 to November 5, 2021; (2) demonstrating that this period closed on November 5, 2021; and (3) determining the extent of Plaintiffs' knowledge of the program during this period. ECF No. 45 at 5. The first two issues concern matters clearly within Evanston's control, so why the city needs discovery into them – whether bifurcated or not – is illusory.[3] While the third issue concerns Plaintiffs' knowledge, that knowledge is inherently intertwined with Evanston's own official public statements and actions about the program. How else would Plaintiffs know about the program other than through Evanston's own public statements and actions? And assuming Plaintiffs were aware of those public statements and actions, including the official guidelines' clear promise that additional applications would be accepted on a rolling basis, why would Plaintiffs' not be entitled to rely on that promise? If

---

[3]     To the extent Evanston seeks to limit Plaintiffs' ability to take discovery, its motion is improper. Evanston cannot dictate how Plaintiffs conceive of and litigate their claims.

Plaintiffs were not aware of the program, then the "discovery rule" may apply to any statute of limitations analysis. *See, e.g.*, *Manzanales v. Krishna*, 113 F. Supp.3d 972, 978 (N.D. Ill. 2015).

Evanston also offers no reason why –bifurcated or not – discovery into Plaintiffs' knowledge should be limited to the initial application period. Should the discovery rule apply, does Evanston not want to know when Plaintiffs discovered their injury and learned it was wrongfully caused? Plaintiffs dispute that the initial application period described in the program's official guidelines is even relevant given Evanston's "rolling basis" promise, among other evidence. And as Plaintiffs have demonstrated, plainly relevant events occurred after the initial period, including the 2022 dedication of an additional $10 million to the program, the 2023 addition of the direct cash payment option, and other public statements in 2024, all of which signal a continuing program that remains active and operational, not one that ended nearly five years ago.

In short, Evanston's plan for bifurcated discovery is illusory, if not a shambles. The present "factual dispute" is one of Evanston's own making. It rests on the city's attempt to walk away from its own clear, pre-litigation statements and actions regarding the program. A litigant should not be afforded bifurcated discovery and sequenced summary judgment motions by trying to dispute its own undeniable official statements and actions.

Moreover, timeliness or jurisdictional questions may be resolved in a separate, preliminary proceeding only when they are unrelated to the merits. *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986). As the Court has already held, Evanston's proposed topics for the first phase of bifurcated discovery are inextricably linked to the merits. As such, there are no efficiencies to be gained by bifurcation. Whether applications were accepted after November 5, 2021, and whether the application period "closed" are facts that will help to establish whether

the program is ongoing – the heart of Plaintiffs' claim that they continue to be injured. And "the extent of Plaintiffs' knowledge of the program" is an element of Plaintiffs' Equal Protection claim: that Plaintiffs were aware of the program and were deterred from applying by its race-based criteria. Evanston cannot litigate whether Plaintiffs were "able and ready" to apply without litigating the merits. Indeed, Evanston concedes as much: it acknowledges "significant factual disputes about the program's eligibility requirements and Plaintiffs' capacity to meet them, which is otherwise a prerequisite for standing." ECF No. 45 at 5. A "prerequisite for standing" is not a severable side issue; it is a constitutional question intertwined with the merits. The "able and ready" inquiry is itself a test for Article III standing. *See Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also Carney v. Adams*, 592 U.S. 53 (2020). By making that inquiry the centerpiece of its "timeliness" phase, Evanston would convert the "straightforward issue of law" it describes into a full standing-and-merits trial – precisely the circumstance in which the Seventh Circuit has held is too "bound up with the merits" to be resolved in isolation. *Crawford*, 796 F.2d at 929. Unlike the plaintiff's mental capacity in *Crawford* – which was "unrelated to the most important issue on the merits" and therefore properly decided first – the questions Evanston would front-load here are inseparable from the merits of whether its racially discriminatory program is unconstitutional.

Evanston's case law proves Plaintiffs' point. Evanston relies on *Zahedi v. Miramax, LLC*, Case No. CV 20-4512-DMG (Ex), 2021 U.S. Dist. LEXIS 182071, 2021 WL 3260603 (C.D. Cal. March 24, 2021), where a court bifurcated discovery because timeliness there was a "straightforward issue[] of law." ECF No. 45 at 6. That is not at all the case here. At issue here is a fact-bound dispute unsuitable for resolution as a matter of law. Evanston's reliance on

*Rockett v. Renth*, Case No. 14-cv-687-DRH, 2016 U.S. Dist. LEXIS 30177, 2016 WL 913262 (S.D. Ill. March 9, 2016) is telling because the court there *denied* bifurcation because scope disputes were likely to arise over whether particular discovery fell within the initial phase. ECF No. 45 at 6. That is exactly what would happen here. Because the timeliness facts and the merits facts overlap, the parties would litigate repeatedly over whether a given interrogatory, request for admission, document request, or deposition topic belongs to the "timeliness" phase or the "merits" phase.

Because the timeliness facts are a subset of the merits facts, bifurcation would not reduce the volume of discovery; it would duplicate it. The witnesses who can testify about application periods are the same witnesses who can testify about how the program operates. The documents concerning the program's rolling-application policy, its funding, and its 2023 expansion are relevant to both timeliness and the merits. Bifurcation would require these witnesses to be deposed twice and these documents to be produced and litigated across two phases, which would increase, not decrease, the burden on the parties and the Court. That is not efficiency; it is delay moonlighting as economy.

That merits discovery may be extensive is a reason to begin it, not to defer it. Evanston's remaining efficiency argument is that bifurcation would spare the parties "burdensome" merits discovery into the program's development, its eligibility requirements, and class issues. Plaintiffs do not concede that merits discovery will be as extensive as Evanston forecasts. But even on Evanston's own description, the argument proves too much. The volume of discovery does not shrink by postponing it; it is merely deferred – pushed further into the future while the alleged constitutional violation continues. If the merits require substantial discovery, that is a reason to begin promptly, not to delay. And because a timeliness ruling would not end the case,

the merits discovery Evanston describes will have to occur regardless; bifurcation would only delay it.

### B.      Bifurcation prejudices Plaintiffs.

Evanston is wrong when it argues that Plaintiffs will suffer no prejudice if the motion is granted.  First, bifurcating discovery and adding an initial round of summary judgment briefing will undoubtedly delay the ultimate resolution of this matter.  As Plaintiffs have pointed out and Evanston has never refuted, neither "remedying discrimination from as many as 105 years ago [n]or remedying intergenerational discrimination [has] ever been recognized as a compelling government interest."  ECF No. 20 at 15.  It took more than 18 months to adjudicate Evanston's failed motion to dismiss, which Evanston filed on July 22, 2024 and the Court denied on March 27, 2026.  Every month that passes is another month that Evanston's flagrant violation of the Constitution continues.  Evanston's assertion that it merely seeks to stay merits discovery "for an additional few months" ignores that, not only will its initial round of discovery require several months, but an initial summary judgment round is likely to require many, many months, if not more than a year, to adjudicate.  Evanston's proposal will cause substantial delay, extending the injury Plaintiffs seek to remedy.

Second, Evanston's proposal is one-sided.  Evanston's initial discovery is front loaded to avoid any inquiry into its own conduct – including its promise to the public that applications would be accepted on a rolling basis and its March 2023 resolution adding a "direct cash payment" to its racially discriminatory program.  Evanston seeks to attack Plaintiffs' claim on a record devoid of any facts regarding Evanston's own, official statements and actions.  That asymmetry is itself prejudicial to Plaintiffs.

Third, piecemeal discovery invites duplication and inconsistent rulings. The overlap between Evanston's statute of limitations defense and the merits of Plaintiffs' claim guarantees disputes about the scope of Evanston's proposed, initial discovery phase and risks inconsistent rulings on what is or is not discoverable. Requiring Plaintiffs to litigate the same factual terrain twice, in two phases, is the opposite of economy.

### C.     Constitutional avoidance does not support bifurcation.

Evanston also cites constitutional avoidance to justify its request. ECF No. 45 at 4–5. The doctrine has no application here. First, constitutional avoidance concerns whether a court should decide a constitutional question when a non-constitutional ground is available to resolve a case. It says nothing about how a court should sequence discovery and summary judgment briefing. Bifurcation is a case-management tool, not a rule of constitutional interpretation, and Evanston provided no authority converting constitutional avoidance into case-management.

Evanston's "non-constitutional" off-ramp is not non-constitutional at all. Its timeliness "defense"—really an attempt to relitigate a previously decided question of Article III standing – is itself a constitutional inquiry. *Northeastern Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666. As such, Evanston's argument does not allow the Court to avoid a constitutional question; it front-loads the question, while deferring the merits. If anything, constitutional avoidance counsels against Evanston's argument.

### D.     Bifurcation Would Not Dispose of the Case.

Evanston's proposed bifurcation does not address the continuing violation argument Plaintiffs advanced when they overcame the city's initial attempt to end this litigation on statute of limitations grounds. ECF No. 20 at 13-15. This key argument would compel the case to proceed despite Evanston's bifurcation proposal. Discovery into the facts underlying Plaintiffs'

continuing violation argument – which is not included in Evanston's bifurcation proposal – is perhaps even more deeply intertwined with the merits than is discovery on the city's obviously incorrect "closed application period" argument. This is especially the case with respect to narrow tailoring, which necessarily entails an inquiry into the purportedly remedial nature of the program, including what remedies are being provided, when they are being provided, and to whom they are being provided,[4] all of which relate directly to the continuing nature of Evanston's constitutional violation every time race-based application is granted or a race-based payment is issued.

Additionally, Evanston ignores the fact that the United States has moved to intervene as a plaintiff, asserting, in part, the same Equal Protection challenge to the program. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."); *see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). If intervention is granted, the case will proceed regardless of Evanston's statute of limitations defense to Plaintiffs' constitutional challenge.

**V.      Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Evanston's motion to bifurcate.

---

[4]      The program makes children, grandchildren, and even great grandchildren of African American or Black individuals who were Evanston residents at any time between 1919 and 1969 eligible for $25,000 "direct cash payment[s]." *See* Exhibit 1 at 3; Exhibit 3.

Dated:  July 17, 2026

Respectfully submitted,

/s/ Michael Bekesha
Paul J. Orfanedes (Ill. Bar No. 6205255)
Michael Bekesha (Mass. Bar No. 675787)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel: (202) 646-5172

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Michael Bekesha