**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland, | ) ) ) ) | Case No. 24-cv-4269 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Hon. John F. Kness |
| City of Evanston, | ) ) | Hon. Gabriel A. Fuentes |
| Defendant. | ) ) ) | |

**DEFENDANT CITY OF EVANSTON'S OPPOSITION TO
PLAINTIFF-INTERVENOR UNITED STATES' MOTION TO INTERVENE**

Defendant City of Evanston ("Evanston") respectfully requests that the Court deny the motion to intervene filed by Plaintiff-Intervenor the United States of America ("the Government"). The Government's motion is untimely and prejudicial, coming over two years after Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland (collectively, "Plaintiffs") filed this case and nearly two years after the Government was unquestionably aware of its alleged interest in this litigation. The motion should be denied.

**FACTUAL BACKGROUND**

On May 23, 2024, Plaintiffs filed their Complaint in this action. *See* ECF No. 1 (the "Complaint"). In the Complaint, Plaintiffs challenge the constitutionality of Evanston's Local Reparations Restorative Housing Program (the "Program") under 42 U.S.C. § 1983 and assert that they were injured because they were deterred from applying due to Evanston's alleged consideration of race in the Program's eligibility criteria. Compl. ¶ 23. Plaintiffs also contend that Program applications would be accepted on a rolling basis and the opportunity to apply to the Program had not closed. Compl. ¶ 11.

1

There can be no dispute that the Government has been on notice of this matter for over two years. First, as Evanston's Program is one of the first of its kind, Plaintiffs' lawsuit received substantial local and national media coverage. *See, e.g.*, Jonathan Bullington and Alex Hulvalchick, *Conservative group files lawsuit over Evanston reparations program*, CHICAGO TRIBUNE (May 31, 2024) (available at https://www.chicagotribune.com/2024/05/24/conservative-group-files-lawsuit-over-evanston-reparations-program/); Andy Rose, *Evanston's groundbreaking reparations program challenged by lawsuit from a conservative activist group*, CNN (June 5, 2024) (available at https://www.cnn.com/2024/06/05/us/evanston-reparations-lawsuit-reaj).

Second, and proving the Government's actual knowledge, on June 25, 2024, two Department of Justice attorneys, Jason Bailey and Lauren Lovett (the "Government Attorneys"), emailed Evanston, informing the City that the Government had been "monitoring" this case and requesting a meeting to discuss the case further. *See* Email from Jason Bailey to Alexandra Ruggie, June 25, 2024, a copy of which is attached as Exhibit 1. The Government Attorneys met with Evanston on July 3, 2024. *See* Meeting Invite, a copy of which is attached as Exhibit 2. Following this meeting, Evanston did not receive any further communication from the Government regarding the case until 2026, nearly two years later.

In the interim, on July 22, 2024, Evanston filed a Motion to Dismiss and For Leave to Take Jurisdictional Discovery. ECF No. 13 (the "Motion to Dismiss"). In the Motion to Dismiss, Evanston argued that Plaintiffs lacked standing because they could not meet the Program's requirements that applicants use Program funds for housing-related purposes within Evanston. *Id.* at 5–6. Evanston also argued that Plaintiffs' claims were untimely under the two-year statute of limitations period applied to § 1983 claims in Illinois. *Id.* at 8. Evanston contended that because

the Program only accepted applications between September 21, 2021 and November 5, 2021, and because of the nature of Plaintiffs' alleged injury (i.e., being deterred from applying to the Program due to the Program's alleged consideration of race, *see* Compl. ¶ 23), Plaintiffs' claims began to accrue, at a minimum, on November 5, 2021. ECF No. 13 at 9.

On September 18, 2024, Plaintiffs filed their opposition to Evanston's Motion to Dismiss. ECF No. 20. In their opposition, Plaintiffs asserted that the Program does not require applicants to use funds for housing-related purposes within Evanston. *Id.* at 8 ("There is no housing-related requirement."). Plaintiffs also claimed that the application period for the Program was not closed. *Id.* at 10 ("The application period is not closed."). And, on October 2, 2024, Evanston filed its Reply in support of the Motion to Dismiss. ECF No. 22.

On March 27, 2026, this Court denied the Motion to Dismiss. ECF No. 37. In denying the motion, the Court found it controlling that the Plaintiffs' Complaint did not allege that the Program had a housing-related requirement, *id.* at 5, and did not "plainly reveal" the action was untimely because it asserted that the Program's application period had not closed. *Id.* at 7. Accordingly, the Court found dismissal was not warranted at the pleading stage. *Id.* at 6–7.

On June 5, 2026, Evanston filed a motion to bifurcate discovery (the "Bifurcation Motion"). ECF No. 45. In the Bifurcation Motion, Evanston seeks to first allow the Parties to compile a factual record and resolve all issues related to Evanston's statute of limitations affirmative defense. *Id.* at 1. The Court adopted an agreed briefing schedule on the motion on June 10, 2026, ECF No. 47, and slightly modified it on July 7, 2026, ECF No. 58. Plaintiffs filed a response to the motion on July 17, 2026. ECF No. 59.

On June 16, 2026, nearly two years after the Government Attorneys informed Evanston that they were "monitoring" the case, the Government filed its motion to intervene. ECF Nos. 48–

49. While Evanston reserves all rights, the Government's motion makes two key points relevant to ongoing disputes between Evanston and Plaintiffs (the "Parties"). First, in its Complaint in Intervention attached as an exhibit to its intervention motion, the Government concedes that the Program's application period closed on November 5, 2021 and no applications have been accepted since that date (nearly four years ago). ECF No. 48-2 (the "Government Complaint") ¶¶ 18, 33.[1] That is, of course, the opposite of what Plaintiffs told this Court. Second, the Government also acknowledged that the Program required applicants to use Program funds for housing-related purposes within Evanston city limits. Gov. Compl. ¶ 19, which is also contrary to the Plaintiffs' allegations to this Court.

## ARGUMENT

### I.  THE GOVERNMENT'S MOTION TO INTERVENE IS UNTIMELY.

The Government's motion is untimely. The Government seeks to intervene under both Federal Rules of Civil Procedure 24(a) and 24(b). Under either intervention standard, the motion to intervene must be timely. *See* Fed. R. Civ. P. 24(a), (b)(1). "The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013). Timeliness is a discretionary analysis, determined by the circumstances of the action. *NAACP v. New York*, 413 U.S. 345, 366 (1973).

In the Seventh Circuit, courts consider four factors to determine the timeliness of intervention: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the

---

[1] Plaintiffs recently reiterated their assertion that the opportunity to apply to the Program has not closed in their opposition to Evanston's Bifurcation Motion. *See* ECF No. 59 at 2–3.

4

intervenor if the motion is denied; and (4) any other unusual circumstances." *Cook Cnty., Illinois v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). The proposed intervenor has the burden of establishing their intervention is timely. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). Intervention may be denied solely on the grounds that it is untimely. *Illinois v. City of Chicago*, 912 F.3d 979, 989 (7th Cir. 2019).

Here, the Government's motion to intervene should be denied because it is plainly untimely. First, the Government cannot deny knowing that its interests were allegedly implicated in this case nearly two years before filing its intervention motion. Second, Evanston would be prejudiced if the Government is allowed to intervene now because the diverging facts in the Government's Complaint could have impacted how this litigation proceeded had the Government timely intervened. But the Government delayed moving to intervene, allowing the litigation to proceed and prejudicing Evanston. Third, the Government failed to identify any real prejudice it would suffer should intervention be denied—and none exist. While reserving all rights, Evanston contends that the Government would not be prejudiced by having to file an independent challenge to Evanston's Program rather than intervening in this case. Finally, there are no "unusual circumstances" that would justify the delay in moving to intervene.

### A. The Government's Delay In Moving To Intervene Was Unreasonable Because It Knew Its Alleged Interests Were Implicated Two Years Prior To Filing.

The Government's delay in moving to intervene was unreasonable. Indeed, the Government, as a prospective intervenor, must intervene "as soon as it knows or has reason to know that its interests *might* be adversely affected by the outcome of the litigation." *Cook Cnty., Illinois*, 37 F.4th at 1341 (citing *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003)) (emphasis added); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) (same) (citation omitted); *see also City of Chicago*, 912 F.3d at 985 ("[W]e measure from

when the applicant has reason to know its interests *might* be adversely affected, not from when it knows for certain that they will be.") (emphasis in original). There is no "simple formula for determining how long a delay is too long[;]" rather, courts consider whether the delay was "unreasonable under the circumstances." *Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35, 47 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty., Illinois v. Texas*, 37 F.4th 1335 (7th Cir. 2022).

Here, conspicuously absent from the Government's motion to intervene is an answer to the question of when the Government first learned of this litigation. *See* ECF No. 48–49. That is because the answer makes clear that the Government's motion was unreasonably delayed. The Government was aware of this litigation and the potential implication of its alleged interests over two years ago. The Government's own communication to Evanston in June 2024, just over a month after the case was filed, stated that the Government was "monitoring" the case. *See* Ex. 1. It then met with Evanston shortly thereafter on July 3, 2024. *See* Ex. 2. A timely motion to intervene would have been filed shortly after this case began. At that time, the Government knew or should have known that the alleged interests it seeks to protect now might be affected by the outcome of the litigation. A motion for intervention must be timely; the Government's motion here was not.

Moreover, the appropriate time for intervention likely began even sooner than the Government's communication to and meeting with Evanston. Given the initial media coverage of this case, the Government should have been aware that its alleged interests may be implicated at the onset of this action. *See Cook Cnty., Illinois*, 340 F.R.D. at 47 (noting that a delay in intervening may be considered unreasonable where there was "significant media and other attention" around the initial matter and many months passed before the intervention).

The Government attempts to explain away its multi-year delay by arguing it was appropriate to wait to intervene until after the Court had ruled on Evanston's Motion to Dismiss.

*See* ECF No. 49 at 4–5. The Government notes that "while this lawsuit was filed two years ago, the Court's decision on Defendants' [sic] Motion to Dismiss was handed down less than three months ago" and argues that "[g]iven that one of the grounds for the (now-denied) Motion to Dismiss was Plaintiffs' lack of standing, it was not unreasonable for the United States to wait until the Court adjudicated whether it even had jurisdiction to hear the claim." *Id*.

This argument fails for at least five reasons. First, as noted above, the Government was unquestionably aware of the litigation at least nineteen days *before* Evanston filed its Motion to Dismiss. That time period was sufficient for the Government to intervene, or at least communicate its intention to do so to the Parties. That the Government failed to promptly intervene makes its attempt to do so now untimely. *See NAACP*, 413 U.S. at 366–67 (1973) (finding a seventeen-day delay between an awareness of interests being implicated and intervention being filed sufficient to render the intervention untimely).

Second, it was unreasonable for the Government to wait to see whether the Court would find that Plaintiffs had standing before filing its intervention motion because the Government has independent standing obligations. An intervenor must establish it has standing to pursue a claim, particularly where an original plaintiff lacks standing and the intervenor brings new, independent claims. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."); *Kaul*, 942 F.3d at 798 ("[a] party without standing cannot intervene as of right"); *Bond v. Utreras*, 585 F.3d 1061, 1071 (7th Cir. 2009) ("permissive intervenors must show standing if there is otherwise no live case or controversy in existence."). Thus, the Government must establish its own standing and injury regardless of whether the Plaintiffs separately have standing. The adjudication of the Motion to Dismiss did not effect this

requirement and cannot be used as justification for the Government's delay in moving to intervene.

Third, the Government's argument that it needed to wait and see how the Court ruled on the Motion to Dismiss is also contrary to Rule 24's timeliness requirements. *See Heartwood*, 316 F.3d at 700–01 (finding the timeliness requirement necessitates that interventors potentially affected by litigation "move promptly to intervene" rather than waiting on the sidelines of the litigation and choosing to intervene to block an undesirable outcome).

Fourth, while not directly raised in the Government's motion to intervene, the Government also cannot argue that it was relying on Plaintiffs to protect its interests while waiting for the Motion to Dismiss to be adjudicated. *See City of Chicago*, 912 F.3d at 985 ("[I]ntervention may be timely where the movant promptly seeks intervention upon learning that a party is not representing its interests."). While Evanston reserves all rights to challenge this contention, the Government's own intervention filing states that its alleged interests and rights are not adequately represented by Plaintiffs. *See* ECF No. 49 at 7 ("[T]he existing parties in this case cannot adequately represent the United States' sovereign interest in ensuring enforcement of fundamental rights under the Constitution."). At a minimum, the Government must have known from the filing of the Complaint and its subsequent "monitoring" of this case that any interest stemming from the Fair Housing Act claim it now seeks to pursue via intervention in this case, *see* ECF No. 48-2 ¶¶ 41–46, was not adequately represented by Plaintiffs, who do not assert a Fair Housing Act violation. And yet the Government failed to attempt to intervene for two years. Accordingly, the Government's delay in moving to intervene was unreasonable and untimely as it knew or should have known its alleged interests were at issue and not adequately protected in the litigation years before it moved to intervene. *See Grochocinski*, 719 F.3d at 798 (denying intervention where the potential intervenor "could have missed the implications for his [interests] only if he was willfully

8

blind to them").

Lastly, while the Government is correct that the analysis of whether a motion to intervene is timely depends on more than the "passage of time," *see* ECF No. 49 at 5, courts have previously found intervention to be untimely where far shorter periods of delay elapsed between the intervenor learning of their interests being implicated and the filing of their intervention than the two-year delay here. *See NAACP*, 413 U.S. at 366–67; *City of Chicago*, 912 F.3d at 984–85 (nine-month delay before intervening was untimely); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) (eleven-month delay was untimely); *Southmark Corp. v. Cagan*, 950 F.2d 416, 418–19 (7th Cir. 1991) (fifteen-month delay was untimely); *Cent. States, Se. & Sw. Areas Pension Fund v. Gopher News Co.*, 542 F. Supp. 2d 823, 828–29 (N.D. Ill. 2008) (one-year delay was untimely). The motion should be denied.

### B. Evanston Was Prejudiced By The Government's Delay In Intervening And Will Continue To Be Prejudiced If Intervention Is Granted.

The second factor of the timeliness analysis also cuts against intervention because the Government's two-year delay in moving to intervene prejudices the Parties,[2] especially Evanston. As discussed below, courts in this circuit have previously found prejudice to the existing parties where the intervenor strategically delays their intervention to allow the litigation to play out, giving them the opportunity to adjust their legal strategies while the existing parties expend resources. Courts have also found prejudice where the intervenor seeks to expand the scope of the litigation and where unexplained time passes before the intervenor seeks to intervene. Here, all factors weigh in favor of a finding of prejudice to the Parties, especially Evanston, from the Government's delay.

---

[2] Evanston acknowledges that Plaintiffs do not oppose the Government's motion to intervene. *See* ECF No. 48 at 4. Nonetheless, it is not clear that Plaintiffs would not have adjusted their legal strategy had the Government timely moved to intervene. Thus, Evanston contends that Plaintiffs are prejudiced by the Government's motion for reasons similar to those herein.

9

**1. The Government's strategic decision to wait nearly two years to move to intervene prejudiced Evanston.**

Evanston is prejudiced by the Government's strategic delay in filing its motion to intervene. In determining whether a party is prejudiced by a delay in the filing of an intervention motion, courts in this circuit have found prejudice to the original parties where an intervenor who knew their interests were at issue strategically waited to intervene to allow the underlying litigation to play out. *See Illinois v. City of Chicago*, 2018 WL 3920816, at *7 (N.D. Ill. Aug. 16, 2018), *aff'd*, 912 F.3d 979 (7th Cir. 2019) (denying intervention as untimely where an intervenor's nine-month delay before intervening while it monitored settlement negotiations was prejudicial to the existing parties); *Sokaogon*, 214 F.3d at 948–50 (affirming intervention was untimely and prejudicial where the intervenor held back intervention until settlement was imminent); *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 728, 731 (N.D. Ill. 2017) (denying intervention where the intervenor was aware of the lawsuit and strategically waited to intervene until the strength of the underlying parties' claims had been determined).

Here, after learning of the case in 2024 and knowing its alleged interests were implicated, the Government chose to strategically delay its intervention motion until after the Parties had expended significant resources litigating this case. For example, in the nearly two years after the Government was unquestionably aware of its alleged interests in this action, Evanston exerted significant resources in developing the legal strategies applicable in this case, including those that went into its Motion to Dismiss. And, beyond briefing the Motion to Dismiss itself, Evanston also filed a notice of supplemental authority and defended the Motion to Dismiss in a hearing before this Court. *See* ECF Nos. 24, 30. The arguments Evanston developed in support of the Motion to Dismiss were premised on being able to resolve this case as to the Plaintiffs and were focused on the Plaintiffs' pleadings and other relevant facts. Evanston also expended time and effort otherwise

10

responding to the Complaint, holding a Rule 26(f) conference with Plaintiffs, meeting and conferring with Plaintiffs, jointly filing proposed discovery schedules with each Party's suggested deadlines, filing its Bifurcation Motion to focus on a case dispositive issue, and negotiating a briefing schedule on the Bifurcation Motion.

Through its proposed intervention, the Government now introduces factual assertions wholly contradictory to Plaintiffs' own factual assertions, prejudicing Evanston. Had the Government intervened at the start of this litigation with its proposed complaint in intervention, Evanston would have used the Government's allegations to support its argument that Plaintiffs' claims should be dismissed. For example, the Government asserts facts that directly contradict Plaintiffs' key assertions regarding the Program. *Compare* ECF No. 20 at 8 *with* Gov. Compl. ¶ 19 (divergent allegations regarding the Program's housing-related requirements); *and compare* ECF No. 20 at 10–11 *with* Gov. Compl ¶¶ 18, 33 (conflicting allegations regarding whether the Program's application period ended and Evanston accepting applications after November 5, 2021).

What is more, instead of intervening as soon as it knew its alleged interests were implicated, the Government admits to sitting back and observing the litigation as Evanston pursued its legal arguments against Plaintiffs' claims. *See* ECF No. 49 at 4–5. As a result, the Government had the ability to modify or tailor its own legal arguments based on Evanston's earlier filings and the Court's rulings. This strategic delay is prejudicial to Evanston, which had no indication that it would have to defend the Program against both the Government's and Plaintiffs' claims while its Motion to Dismiss and subsequent filings were being adjudicated.

Evanston is also prejudiced by the proposed expansion of the scope of the litigation. Prior to the Government's motion to intervene, the Parties filed a Joint Initial Status Report that provided what each side believed are the key factual and legal issues in relation to Plaintiffs' 42 U.S.C.

11

§ 1983 claim challenging the constitutionality of the Program. *See* ECF No. 44 at 2–4. While Evanston reserves all rights to address the Government Complaint, the Government's delay in intervening requires Evanston to reevaluate the case's key issues after it already exerted resources and time doing so, prejudicing Evanston. Had the Government moved to timely intervene nearly two years ago, Evanston could have begun this strategic evaluation at the onset of this litigation and may have adjusted its legal strategy, especially to account for the contradictory assertions between the Government and Plaintiffs' Complaints.

Courts in this circuit have rejected intervention as prejudicial where the intervenor strategically delayed their intervention to allow the litigation to play out and only sought to intervene when it would be advantageous. *See City of Chicago*, 912 F.3d at 986–87; *Sokaogon*, 214 F.3d at 948–50; *Kostovetsky*, 242 F. Supp. 3d at 731. Here, the strategic timing of the Government's motion to intervene is advantageous to the Government and Plaintiffs as Evanston seeks to potentially resolve this case as to the original Plaintiffs through its Bifurcation Motion and proposed discovery plan that challenges the timeliness of Plaintiffs' claims. As Plaintiffs asserted in their motion to stay briefing on the Bifurcation Motion and in opposition to the Bifurcation Motion, they now seek to delay the resolution of the issue of whether Plaintiffs' claims are time-barred. *See* ECF No. 53 at 2; ECF No. 57 at 1–3; ECF No. 59 at 4–9. The timeliness requirement is meant to prevent this strategic delay.

2. **The Government's claims expand the scope of the litigation, further prejudicing Evanston and weighing against intervention.**

The Government's intervention additionally prejudices Evanston because it seeks to introduce a new Fair Housing Act claim into the litigation, complicating the case and potentially delaying resolution as Evanston has to defend the Program against this new claim. *See* ECF No. 48-2 ¶¶ 41–46. Courts have previously held that intervention is prejudicial to the existing parties

where an intervenor seeks to expand the scope of discovery or increases the complexity of the litigation. *See, e.g.*, *Commonwealth Edison Co. v. Allis–Chalmers Mfg. Co.*, 207 F. Supp. 252, 257 (N.D. Ill. 1962) (denying a motion for intervention as untimely due to concerns that the case would "approach unmanageable proportions both in preparation and trial").

### 3. The length of the Government's delay also prejudices Evanston.

The sheer length of the Government's delay here prejudices Evanston. The Government argues that this action's preliminary posture means that no prejudice will arise from its intervention and cites a number of cases where intervention was granted later in a case's lifecycle to argue intervention is proper here. ECF No. 49 at 5–6. The Government improperly conflates the procedural posture of this case with the prejudicial effect of its intervention. Most relevant to the determination of the timeliness of the Government's intervention is the prejudice created by the length of the Government's delay in moving to intervene while this litigation progressed. Unlike the Government here, the cases cited by the Government concerned intervenors who moved to intervene promptly after discovering their interests were implicated and whose intervention did not cause prejudice to the existing parties. *See Smith v. Bd. of Election Comm'rs for City of Chicago*, 103 F.R.D. 161, 163 (N.D. Ill. 1984) (granting intervention where intervention was timely filed and the existing parties would not be prejudiced); *Select Retrieval, LLC v. ABT Elecs.*, 2013 WL 6576861, at *1–2 (N.D. Ill. Dec. 13, 2013) (same); *ABS Glob., Inc. v. Inguran, LLC*, 2015 WL 1486647, at *2 (W.D. Wis. Mar. 31, 2015) (same); *Canterino v. Wilson*, 538 F. Supp. 62, 64 (W.D. Ky. 1982) (granting intervention by the United States only where "no new issues [were] put in dispute by the intervening complaint" and thus there was no prejudice to the defendants as they "were already preparing for the claims asserted before the motion to intervene was made"). As argued above, this action materially differs from the cases cited by the

13

Government because the Government's extremely untimely intervention prejudices Evanston, seeks to interject new allegations and a new claim, and complicates the scope of this litigation, more than two years into the litigation.

Thus, the second timeliness factor weighs heavily against intervention. The motion to intervene should be denied.

### C.      The Government Would Not Be Prejudiced If Intervention Is Denied.

Generally, courts in this circuit have found that no prejudice exists to a proposed intervenor if the intervention is denied where the intervenor has alternative avenues for vindicating their alleged interests. *See Gopher News Co.*, 542 F. Supp. 2d at 829 (denying intervention where the intervenors could "file their claims elsewhere"); *Cook Cnty., Illinois*, 340 F.R.D. at 53 (finding no substantial prejudice to the potential intervenor where they had "alternative forums in which to assert their interest."). While reserving all rights, Evanston contends that the Government, if it legitimately wants to pursue its alleged interests, could file an independent action challenging the Program rather than intervening in this case. In fact, an independent action is more appropriate given the divergent factual allegations between the Plaintiffs' Complaint and the Government Complaint, as described above, and the fact that this litigation should be focused on the heretofore dispositive issue of the Plaintiffs' violation of the statute of limitations for their claim. The Government thus suffers no prejudice from having its intervention motion denied.

In its intervention filings, the Government does not directly address how it would be prejudiced should intervention be denied. However, it does argue that "[b]ecause Plaintiffs' and the United States' complaints raise common questions of law and fact in challenging the City Program, the outcome of this case, including potential appeals for existing parties, implicates *stare decisis* concerns that warrant the United States' intervention." ECF No. 49 at 7. While Evanston

reserves all rights, this argument is undercut by the very next paragraph of the Government's motion, which argues that "the existing parties in this case cannot adequately represent" the Government's interests. *Id.* Accordingly, under the Government's own argument, no claim preclusion or issue preclusion could arise from this case that would impair the Government in a future action. *See Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 575 (7th Cir. 2013) (noting that claim preclusion requires the parties asserting preclusion to either have been a party or have been in privy with a party in the prior adjudication); *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (noting that issue preclusion requires the party against whom preclusion is being raised to "have been fully represented in the prior action."). The Government would thus suffer no prejudice from a denial of its motion, so the third factor cuts against intervention. The motion should be denied.

**D.      There Are No Unusual Circumstances That Justify The Government's Delay.**

Finally, the Government does not argue in its motion to intervene that any unusual circumstances would justify the Government's two-year delay in moving to intervene in this case, and there are none. As a result, this factor does not impact the analysis of whether the Government's motion to intervene is timely. And since all other factors weigh against the Government's ability to intervene in this case nearly two years after it undeniably knew about the case and its alleged interests being implicated, the motion should be denied.

## CONCLUSION

WHEREFORE, Defendant City of Evanston respectfully requests that the Court deny the Government's Motion to Intervene.

15

Dated: July 20, 2026

Respectfully submitted,

CITY OF EVANSTON
By: /s/ *Wade A. Thomson*
*One of its attorneys*

Wade A. Thomson
Precious S. Jacobs-Perry
Jeffrey P. Salvadore
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel.: (312) 222-9350
Fax: (312) 527-0484
wthomson@jenner.com
pjacobs-perry@jenner.com
jsalvadore@jenner.com

Alexandra B. Ruggie
Cynthia Grandfield
CITY OF EVANSTON
909 Davis Street, 3rd Floor
Evanston, IL 60201
Tel.: (847) 866-2937
aruggie@cityofevanston.org
cgrandfield@cityofevanston.org

*Counsel for Defendant*

16

17

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*

17