**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MARGOT FLINN, CAROL JOHNSON, | ) | |
| STASYS NEIMANAS, BARBARA REGARD, | ) | |
| HENRY REGARD, and STEPHEN WEILAND, | ) | Case No. 24-cv-4269 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Hon. John F. Kness, District Judge |
| | ) | |
| CITY OF EVANSTON, | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY TO DEFENDANT'S OPPOSITION TO UNITED STATES'
MOTION TO INTERVENE**

**INTRODUCTION**

Pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure and Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, the United States has an unconditional right to intervene in a case to seek relief from the denial of equal protection of the laws on account of race or color under the Fourteenth Amendment to the Constitution. Rule 24(a)(1) provides that "on timely motion, the court *must* permit anyone to intervene who [] is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1) (emphasis added). Section 902 provides that unconditional right, and intervention *must* be allowed if (1) "the Attorney General certifies that the case is of general public importance;" and (2) the application to intervene is "timely." 42 U.S.C. § 2000h-2. *See, e.g., Melendres v. Arpaio*, No, CV-07-2513-PHX-GMS, 2015 WL11071095, at *1 (D. Ariz Aug 13, 2015) (stating that intervention under Section 902 is an "unconditional right" and that courts "must permit intervention … so long as the United States' application was timely."); *Carter v. Sch. Bd. of W. Feliciana Par.*, 569 F. Supp. 568, 570-71 (M.D.

1

La.1983) (Section 902 grants "an unconditional right to intervene in those cases which he certifies are of general public importance.").

The City does not dispute that that the United States has an unconditional statutory right to intervene under Section 902 and Rule 24(a)(1) or that the Acting Attorney General has made the necessary certification.[1] Moreover, the City admits that the case is in a "preliminary posture" as no scheduling order has been entered, and that courts have allowed intervention in cases that were significantly further along "in a case's lifecycle" than this one. Doc. 60 at 13. In fact, the City does not cite a *single case* in which a court found that intervention by the United States under Section 902 was untimely.

Nevertheless, Defendant argues that this court should deny intervention because the United States' motion is not timely. Defendant bases this assertion on the mere fact that at least two attorneys in the United States Department of Justice were aware of this case by late June 2024. Doc. 60 at 6. Under this logic, once an attorney for the United States is aware of a case alleging a denial of equal protection, the Attorney General must promptly certify that the case is of public importance "shortly" thereafter or permanently forfeit the right of the United States to intervene later. Nothing in the text of the statute or the case law supports such a reading of when the United States' "unconditional right to intervene" is timely. *See Carter*, 569 F. Supp. at 571 (M.D. La. 1983).

---

[1] In its motion, the United States relied primarily on Rule 24(a)(1) and 42 U.S.C. § 2000h-2 to support its right to intervene. Doc. 49 at 2, 3-6. In the alternative it argued that it met the requirements for intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(1)(B). *Id*. at 2, 6-8. For reasons stated in that brief, intervention is also appropriate under Rules 24(a)(2) and 24(b)(1)(B). Because the United States is entitled to intervention under Rule 24(a)(1) and 42 U.S.C. § 2000h-2, however, it is not necessary for the Court to consider remaining provisions of Rule 24. This Reply focuses on the unconditional statutory right to intervene provided by Section 902.

Defendant also argues it has been prejudiced by the timing of the United States' motion to intervene because its strategy to defeat Plaintiffs' claim has been compromised. *See* Doc. 60 at 10. But it has failed to explain how its position is meaningfully different now than it would have been if the United States had moved to intervene at an earlier date. All that has occurred in this litigation to date is adjudication of Defendants' motion to dismiss Plaintiffs' complaint for lack of standing. The mere fact that the City will now have to defend its conduct on the merits against the claims of the United States as well as the original Plaintiffs is not "prejudice" sufficient to make the United States' intervention untimely. Nor are its other strained arguments about alleged prejudice viable.

There is no merit to the City's bizarre claim that the United States must show, as a condition to intervention, that it could not protect its interests by filing an independent action rather than moving to intervene. *See* Doc. 60 at 14-15. Defendant cites nothing in Section 902 or case law applying it to support this argument. Section 902 gives the United States the right to intervene in a timely manner if the Attorney General certifies that the case is a matter of public importance. The Acting Attorney General made that certification, and the United States has exercised its statutory right to intervene before a scheduling order has even been entered. The Court should grant the United States' motion to intervene.

## ARGUMENT

### I. The United States' Awareness of this Case in 2024 Does Not Make its Intervention As of Right Under Rule 24(a)(1) and 42 U.S.C. § 2000h-2 Untimely

Section 902 allows the United States to intervene in a case alleging a denial of equal protection on account of race or color "upon timely application." 42 U.S.C. § 2000h-2. As the Seventh Circuit has explained, "[t]he purpose of the timeliness requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). This suit, however, is nowhere near "the terminal"; it

3

has arguably just barely left the station. There is not yet a scheduling order in place, discovery has not begun, and there has been no litigation on the merits.[2]

The United States' motion to intervene would not "derail" this lawsuit. In fact, courts have allowed the United States to intervene under Section 902 in situations where the case was procedurally much more advanced that this one, including at the remedial stage after liability has been established. For example, in *United States v. Jefferson County Board of Education.*, the United States did not seek to intervene until after the defendant County had submitted a proposed remedial plan to comply with the district court's earlier decree. *See United States v. Jefferson Cnty. Bd. of Educ.*, 372 F.2d 836, 895 (5th Cir. 1966), *decree corrected*, 380 F.2d 385 (5th Cir. 1967). The Fifth Circuit held the district court had erred in denying the United States' motion as untimely. *Id*. Similarly, in *Carter*,, the court found the United Sates' intervention under Section 902 was timely even though the action had been pending for more than 18 years and 13 years had passed since the district court had entered a desegregation decree as requested by the original Plaintiffs. *See Carter*, 569 F. Supp. at 570-71; *see also Canterino v. Wilson*, 538 F. Supp. 62, 64 (W.D. Ky. 1982) (allowing intervention under Section 902 near the close of discovery and six weeks before trial); *Stell v. Savannah-Chatham Cnty. Bd. of Educ.*, 255 F. Supp. 88 (S.D. Ga. 1966) (allowing intervention under Section 902 over two years after the case had been tried and after the court had already entered one desegregation order). As the *Carter* court noted, Section 902 grants "the

---

[2] The City also argues it is immaterial to timeliness that the Court only recently denied the City's motion to dismiss on standing because as an intervenor the United States would have had to establish standing. *See* Doc. 60 at 7. This defies logic. First, the United States has standing to intervene because the United States is always injured when a state or local government denies equal protection of the law to persons because of race or color. *See Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 429-30 (1976) (presence of United States as intervenor under Section 902 preserved the case or controversy even though the individual plaintiffs had graduated). Second, the fact that the United States promptly moved to intervene just as the Court had cleared the way for consideration of the merits of whether the City has violated the Equal Protection Clause clearly is relevant in assessing whether intervention is timely. Since the merits were not considered during the two-year period, the absence of the United States did not put the City in a worse position than if it had intervened earlier.

Attorney General—whoever occupies that office—an unconditional right to intervene in those cases which he certifies are of general public importance," and the requirement of timeliness should be applied "within the flexibility required in matters of this nature." *See Carter*, 569 F. Supp. at 570-71.

Of course, where the United States moves to intervene at a more advanced stage the Court will have discretion to avoid any unnecessary delay, such as limiting the government's ability to contest certain issues that have already been decided before it entered. *See*, *e.g.*, *Stell*, 255 F. Supp. 88. But the City cites no cases where a court has denied intervention under Section 902 as untimely,[3] much less one where the United States has moved to intervene before the court has even entered a scheduling order.

The City asks this Court to read into the requirement that the application be "timely" a strict statute of limitations that requires the United States to intervene almost immediately after it learns about the matter, if not earlier. *See* Doc. 60 at 6 (asserting that "[a] timely motion to intervene would have been filed shortly after this case began"). And a failure to do that would apparently, under the City's theory, permanently bar the United States from ever intervening in the future. That result cannot be squared with the language of the statute, much less the more flexible approach

---

[3] None of the cites relied on by Defendant involve the right of the Attorney General to intervene under 42 U.S.C. § 2000h-2, or any other unconditional statutory right to intervene. In each case the proposed intervenor sought intervention not under Rule 24(a)(1) but to protect an interest under Fed. R. Civ. P. 24(a)(2) and 24(b). *See NAACP v. New York*, 413 U.S. 345, 365 (1973); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.3d 531, 534 (7th Cir. 1987); *Cook County, Ill. v. Texas*, 37 F.4th 1335, 1344 (7th Cir. 2022); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000); *Southmark Corp. v. Cagan*, 950 F.2d 416, 418 (7th Cir. 1991); *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019); *Central States Southeast and Southwest Areas Pension Fund v. Gopher News Co.*, 542 F.Supp.2d 823, 828-29 (N.D. Ill. 2008) (plaintiff only sought permissive intervention under Rule 24(b)). The analysis of whether intervention should be granted as of right in those cases was therefore governed by Rule 24(a)(2) and 24(b), not by Rule 24(a)(1), which applies in this case. Therefore, the issue of when the prospective intervenor was aware it had "an interest relating to the property or transaction" under Rule 24(a)(2)—which forms the crux of the City's argument, *see* Doc. 60 at 8-9—is simply irrelevant to whether the United Sates has timely exercised its statutory right to intervention under Rule 24(a)(1) and 42 U.S.C. § 2000h-2.

reflected in the case law as described above. The statute simply requires that an application be "timely," meaning that it be at an appropriate time under the circumstances, not that it be filed at the earliest possible time. This is, in fact, the common meaning of the term. *See* Oxford English Dictionary(2d ed. 1989) (defining "timely" as "[o]ccurring, done, or made at a fitting, suitable, or favorable time; opportune, well-timed, seasonable").

In this case, the United States' motion is appropriate given the circumstances. Recall, that to intervene under Section 902, the Attorney General must certify the case as one of "general public importance." This case is important only insofar as the merits of Evanston's "reparations" are concerned. The questions of whether named plaintiffs have standing are run-of-the-mill considerations which did not warrant the United States' involvement. However, as the likelihood that this Court would address the merits have increased, so too has the case's "general public importance." Thus, the appropriate inquiry is whether the Attorney General certified this case in a timely manner given the case's procedural posture. There can be no serious debate that the Attorney General promptly certified the case and the United States promptly moved to intervene after this Court moved the case closer to the resolution on the merits.

The cases on which Defendant relies, Doc. 60 at 6, 9, 10, are inapposite. First, the procedural posture in each of those cases was materially more advanced than in this case, where no scheduling order has been entered, no discovery started, and no litigation on the merits. *See NAACP v. New York*, 413 U.S. 345, 367 (1973) (intervention sought after motion for summary judgment had been filed); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.3d 531, 535 (7th Cir. 1987) (intervention sought over three years after plaintiff filed suit and almost a year after parties had started well publicized settlement negotiations); *Cook County, Ill. v. Texas*, 37 F.4th 1335, 1343 (7th Cir. 2022) (noting State sought to intervene at "the tail end of [the] lawsuit");

*Sokaogon*, 214 F.3d. at 949 (intervention sought five years after litigation had been filed and after parties had reached a proposed settlement); *State v. City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019) (intervention for purpose of blocking a consent decree sought after negotiations on consent decree were at advanced stage); *Southmark Corp. v. Cagan*, 950 F.2d 416, 418 (7th Cir. 1991) (intervention sought after motion for summary judgment had been filed); *see also Central States Southeast and Southwest Areas Pension Fund v. Gopher News Co.*, 542 F.Supp.2d 823, 827-29 (N.D. Ill. 2008) (motion for permissive intervention was filed just three months before the close of discovery and four months before the deadline for filing dispositive motion). Second, none of these cases involved the right of the Attorney General to intervene under 42 U.S.C. § 2000h-2, where "timeliness" must be measured by reference to when the case became one of "general public importance." *See supra* n.3.

The United States' Motion is therefore timely.

**II. The City Does Not Allege Any Prejudice That Would Justify Denial of Intervention as Untimely.**

Alternatively, the City argues that it will be so prejudiced by intervention at this stage that denial of intervention is appropriate. As the Seventh Circuit has emphasized, "[t]he most important considerations in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 389-90 (7th Cir. 2019) (internal quotation omitted); *accord Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994). And the prejudice to the original parties that is relevant "concerns only prejudice caused by [the] delay, not prejudice that may result if intervention is allowed." *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996); *see also Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) ("[T]the only prejudice that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after

he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult.") (internal quotations omitted). The City does not allege such prejudice, as it never explains how its position would now be materially different but for the United States not moving to intervene at an earlier time.

The City argues that it would have presented its motion to dismiss differently had the United States moved to intervene earlier because supposedly the United States' Proposed Complaint in Intervention accepts the City's contested factual assertions that its application program has closed and that recipients must use funds they receive through the reparations program for housing in the City. Doc. 60 at 11. That is wrong for two reasons. First, the City's reading of the United States' complaint is simply wrong. While the Proposed Complaint in Intervention alleges that the initial criteria for the program stated that recipients would receive funds only to be used for housing, it also alleges that the City later amended the program to allow for unrestricted cash payments that can be used for any purpose. Doc. 48-2, ¶ 20. Nor does the Proposed Complaint in Intervention concede that Program has closed. To the contrary, United States alleges that "[a]lthough the City has not accepted any applications for the Program since Nov. 5, 2021, none of the resolutions authorizing the Program have been rescinded and nothing in the text of these resolutions limits the City's ability to restart accepting applications at any time." Doc. 48-2, ¶ 33.

But even if the City were correct that some of the United States' allegations were consistent with its own view of the facts, it fails to explain how its position would have been any different if the United States had moved to intervene at an earlier time. As the City admits, the Court denied its motion to dismiss applying the appropriate standard that requires the Court to accept *Plaintiffs'* allegations as true and construe them in the light most favorable to *Plaintiffs*. *See* Doc. 60 at 3. That standard would have still applied if the United States had moved to intervene at an earlier time. Even if the United

States' pleading had been arguably inconsistent with that of the original Plaintiffs (and indeed, even if the United States had fully supported the City), this Court would have still been obligated to accept the Plaintiffs' allegations as true and construe them in Plaintiffs' favor, and adjudicate the motion to dismiss in exact same manner as it did, leading the Court to deny the motion. Ultimately, the facts are what they are, and the City will have ample opportunity to set forth its view of the relevant facts regarding its program in discovery.

The City also argues that it is prejudiced because it "exerted significant resources in developing the legal strategies applicable in this case, including those that went into its Motion to Dismiss." Doc. 60 at 15. It fails to explain, however, how it would be in a different position if the United States had moved to intervene at an earlier time. Up to now, the City's litigation efforts focused on obtaining dismissal of Plaintiffs' claims based on standing, without reaching the merits. And to the extent the City has expended resources developing a strategy on the merits—*i.e.*, to establish that its race-based program is narrowly tailored to serve a compelling interest—it fails to specify how anything in the United States' Complaint has caused it to change that strategy.

Finally, the City asserts it will be prejudiced because the proposed Complaint in Intervention would "introduce a new Fair Housing Act claim into the litigation, complicating the case and potentially delaying resolution." Doc. 60 at 12. That argument is entirely irrelevant to the question of *timeliness*. As the Ninth Circuit explained (in the process of permitting the State of Idaho to intervene) where existing parties "do not suggest that their problems are materially different now than they would have been had [the proposed intervenor] sought to intervene a decade or more ago, [there is] no basis … for holding that the intervention would prejudice the existing parties because of the passage of time." *United States v. State of Oregon*, 745 F.2d 550, 553 (9th Cir. 1984). Thus, even assuming that the Fair Housing Act claim introduces new complexities into this litigation (which, for reasons explained below it does not), these complexities are the same had the United States filed its motion two years ago.

Moreover, the Fair Housing Act claim is based on the same core operative facts as the Equal Protection Claim, the City's race-based program to provide housing assistance and unrestricted cash payments because of race. *See* Doc. 48-2 at ¶¶ 37, 41 (incorporating same factual allegations in for both claims). The fact that the City's chosen conduct has exposed it to liability under two separate legal claims may increase its exposure, but it is a consequence of its own actions, not a basis for denying intervention. And the City never explains how the Fair Housing Act claim would delay resolution in comparison to the United States seeking intervention at an earlier time. No scheduling order has been entered and the City is seeking to bifurcate discovery. The City also has the option to seek appropriate modifications to the scheduling order if the Fair Housing Act claim, or other matters, make such modifications appropriate. Such hypothetical concerns, before a scheduling order has even been entered, do not justify denying intervention.

Furthermore, the addition of the Fair Housing Act claim is simply a consequence of intervention being allowed, not, as is required to establish prejudice, harm caused by the delay itself. *See Edwards*, 78 F.3d at 1002; *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) ("[E]very motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention."). The City fails to articulate how its position today would be better if the United States had moved to intervene earlier and included its Fair Housing Act claims at that time. The City would still be facing the same alleged burdens of defending those claims in addition to those of Plaintiffs after the denial of its motion to dismiss. It fails to explain how the delay itself makes its position any more adverse today than it would have been at an earlier time.

### III. The United States is Not Required to Show that Maintaining a Separate Suit Against the City is Infeasible

The City also asserts that intervention should be denied because the United States "could file an independent action challenging the Program rather than intervening in this case." Doc. 60

10

at 14. The United States' failure to allege otherwise, it asserts, requires this Court to deny the intervention. *Id*.

The City never specifies what claims it believes the United States could pursue if it filed an independent action. *See id*. It does not allege, for example, that the United States could independently bring claims under both the Equal Protection Clause and the Fair Housing Act if it filed a separate action rather than intervening. *See id*.

This argument is also hard to square with the Defendant's earlier pleas that permitting intervention would be unduly burdensome to the City. Surely, defending two separate actions, proceeding on different timelines, is more burdensome than defending a single action with a coordinated schedule.[4]

In any event, the City cites to nothing in the plain text of Rule 24(a)(1) or Section 902, and nothing in the cases applying Section 902, to support its claim that this Court can deny intervention if it determines the United States could bring the same claims in an independent action. The United States has an unconditional right to timely intervene under Section 902 in a case alleging a denial of equal protection on account of race or color when the Attorney General certifies that the case is a matter of public importance.

The United States has satisfied that requirement and its motion to intervene at this early stage of the litigation should be granted.

### III. Conclusion

This Court should grant the United States' Motion for Intervention.

---

[4] Moreover, were the United States to file a separate action, under Loc. R. 40.4(a)(2), it would have to identify the newly filed case as "related" to this case, likely causing it to be re-assigned to the same judge under subsection (b) of the same rule. Under this scenario, the Court could, in its discretion, consolidate both cases, resulting in exact same procedural posture that would be obtained by permitting intervention. The City's proposed solution does not address any of its concerns, elevates form over substance, and unnecessarily increases the burdens on this Court and all parties.

Dated: August 3, 2026

Respectfully Submitted,

ANDREW S. BOUTROS
United States Attorney Northern
District of Illinois

HARMEET K. DHILLON
Assistant Attorney General Civil
Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney
General

ERIC SELL
Deputy Assistant Attorney General

GREGORY DOLIN
Senior Counsel

CARRIE PAGNUCCO
Chief

/s/ Timothy J. Moran
TIMOTHY J. MORAN (Ill. Bar No.
6207397) Deputy
Chief
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice 950
Pennsylvania Avenue —4CON
Washington, DC 20530
Tel.: (202) 532-5422
Fax: (202) 514-1116
Timothy.Moran@usdoj.gov

Attorneys for Plaintiff United
States of America

12

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

_/s/ Timothy J. Moran_