**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARGOT FLINN, CAROL JOHNSON, STASYS NEIMANAS, BARBARA REGARD, HENRY REGARD, and STEPHEN WEILAND, | ) | Case No. 24-cv-4269 |
| Plaintiffs, | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Intervenor. | ) | |
| v. | ) | Hon. John F. Kness, District Judge |
| CITY OF EVANSTON, | ) | |
| Defendant. | ) | |

**COMPLAINT IN INTERVENTION OF THE UNITED STATES OF AMERICA**

The United States of America brings this Complaint in Intervention to halt and remedy the City of Evanston's ongoing violations of the Equal Protection Clause of the Fourteenth Amendment and the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*., and alleges as follows:

**INTRODUCTION**

1. Since 2021, and continuing to the present, the City of Evanston, Illinois ("Evanston" or "the City") has maintained and implemented a racially discriminatory program in which it has offered and distributed unrestricted cash payments and financial assistance for purchasing, constructing, improving, repairing, or maintaining housing in the City, exclusively to current or former black residents who lived in the City as adults between 1919 and 1969, and to

their children, grand-children, and great-grand-children.[1] The City offers and provides these payments and financial assistance, which total $25,000, to all black persons or their descendants who meet these requirements, regardless of where or how long they or their ancestor lived in the City during this time and regardless of whether they or their ancestor were the victims of racial discrimination by the City. And the City offers and provides these benefits solely to eligible black residents and their descendants. Persons of other races, including ones who were victims of unlawful racial discrimination by the City between 1919 and 1969, are not eligible for any payments or financial assistance under the City's program; neither are their descendants.

2. "[T]he Constitution almost never permits [a government] to discriminate on the basis of race. Such discrimination triggers strict scrutiny. . . ." *Louisiana v. Callais*, 146 S. Ct. 1131, 1152 (2026). And the compelling interests that justify race-based government actions are "rare for a reason. Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Students for Fair Admissions, Inc. v. Presidents and Fellows of Harvard Coll. (SFFA)*, 600 U.S. 181, 207 (2023) (citations and quotations omitted).

3. One compelling interest that potentially justifies race-based government actions is "remediating specific, identified instances of past discrimination that violated the Constitution or a statute." *SFFA*, 600 U.S. at 207 (citations omitted). To satisfy strict scrutiny, however, a race-based effort to remedy past discrimination must satisfy two conditions. "First, . . . the [government] must identify the specific instance of past discrimination that it aims to remediate and, in light of that specification, must determine the precise scope of the injury it seeks to remedy . . . Second, after

[1] Resolution 37-R-21 (Mar. 22, 2021), Dkt. 20-1 at 6-18; Resolution 27-R-23 (Mar. 27, 2023), Dkt. 20-1 at 59-60. All citations to documents filed on the Court's docket in case 1:24-cv-4269 are citations to the pages on the ECF header.

identifying the specific instance of discrimination, the [government] that makes the racial distinction must have . . . a strong basis in evidence to conclude that its remedial action is necessary." *Callais*, 146 S. Ct. at 1152-53 (citations and quotations omitted). The government has no compelling interest "in generally remediating past discrimination in a particular industry or region or the effects of societal discrimination." *Id*. at 1153 (citations and quotation marks omitted).

4. The City's racially discriminatory program is not narrowly tailored to remedy specific identified instances of past discrimination that violated the Constitution or a statute. Each of the two resolutions authorizing the City's program contains boilerplate statements that "acknowledge[] the harm caused to Black/African-American Evanston residents due to discriminatory housing policies and practices and inaction on the part of the City."[2] The City's resolutions, however, do not contain any findings of "specific, identified instances," *SFFA*, 600 U.S. at 207, of such unlawful housing discrimination that occurred in the City between 1919 and 1969 that the City seeks to remediate. Nor do these resolutions identify "the precise scope of the injury it seeks to remedy" or any "strong basis in evidence to conclude that its remedial action is necessary." *Callais*, 146 S. Ct. at 1153 (internal alterations omitted). And the program is not tailored to compensate the victims of such discrimination or their descendants. Applicants are not required to allege that they are, or their ancestors were, victims of racial discrimination. The initial resolution creating the City's program makes clear the City's purpose is to increase, in general, the quality of housing, the homeownership rate, and the intergenerational equity of "Black/African American Evanston residents," regardless of their individual experiences in Evanston or that of their ancestors.[3] Even where existing racial inequities in housing were caused in part by past

---

[2] Resolution 37-R-21, Dkt. 20-1 at 6; Resolution 27 R-23, Dkt. 20-1 at 59.

[3] Resolution 37-R-21, Dkt. 20-1 at 7.

discrimination, there is no compelling interest in "generally remediating . . . the effects of societal discrimination." *Callais*, 146 S. Ct. at 1153 (citations and quotation marks omitted).

5. Evanston has chosen to distribute substantial benefits to persons solely because of their race or the race of their ancestors. It has not taken any steps to tailor those benefits to the harms those persons may have suffered. Through its actions, Evanston has violated the Equal Protection Clause and the Fair Housing Act.

**JURISDICTION**

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

7. The United States is authorized to intervene in this action under 42 U.S.C. § 2000h-2. The Acting Attorney General of the United States has certified this case is of public importance. U.S. Mot. To Intervene, Ex. 1.

8. The United States is further authorized to bring this action to enforce the Fair Housing Act. 42 U.S.C. § 3614(a).

9. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because: (1) the City resides in this judicial district; and (2) a substantial part of the events or omissions giving rise to the claims of the United States have occurred in this judicial district.

**PARTIES**

10. Based on information and belief, the United States incorporates Paragraphs 3-8 of Plaintiffs' Complaint (Dkt. 1) regarding the plaintiffs to this action.

11. Plaintiff-Intervenor is the United States.

12. Defendant City of Evanston is a general-purpose municipal government located in Cook County, Illinois. It is a home rule unit, as defined in the 1970 Illinois Constitution.

## THE CITY'S UNLAWFUL PRACTICES

### I. The City Adopted a Race-Based Program Even After It Was Warned That the Program Was Likely Unconstitutional

13. On or about March 22, 2021, the City adopted a resolution authorizing the "Local Reparations Restorative Housing Program" ("the Program").[4]

14. Under the Program, applicants who qualified as an "Ancestor" or a "Direct Descendant" would receive $25,000. An "Ancestor" is a black person who resided in the City as an adult at any time between 1919 and 1969. A "Direct Descendant" is a child, grand-child, or great grand-child of an "Ancestor."[5]

15. Eligibility as an "Ancestor" or "Direct Descendant" under the Program is limited based on race. Only persons who are black, or whose "Ancestor" was black, qualify to receive payments as an "Ancestor" or a "Direct Descendant," respectively.

16. The stated purposes of the Program are explicitly based on race, *viz.*, "revitalizing, preserving, and stabilizing Black/African American owner-occupied homes in Evanston, increasing homeownership and building the wealth of Black/African-American residents, building intergenerational equity amongst Black/African-American residents, improving the retention rate of Black/African-American homeowners in the City of Evanston."[6]

17. While the City was considering whether to establish the Program, former White House Counsel C. Boyden Gray submitted a detailed legal analysis to Evanston explaining that the Program would provide benefits based on race and would be unconstitutional under Supreme Court

---

[4] Resolution 37-R-21, Dkt. 20-1 at 6.

[5] *Id*. at 11-12, 15.

[6] *Id*. at 11.

precedent. Among other things, the letter pointed out that the Program was not supported by "the kind of specific evidence necessary to justify the imposition of a . . . racially discriminatory policy." The letter also noted that the City "had failed to give more than perfunctory consideration to race-neutral considerations such as upzoning, loosening restrictive zoning practices" or providing "income-based housing assistance to achieve greater financial equality regardless of the race of the applicant."[7] The City nevertheless adopted the Program without making changes to address the legal objections identified in the analysis.

## II. The City Has Distributed and Continues to Distribute Millions of Dollars Through the Program Based on Race

18. Following the establishment of the Program, the City accepted applications from September 21, 2021, through November 5, 2021, from persons who alleged they qualified as an "Ancestor" or as a "Direct Descendant."[8]

19. As initially established, the Program offered applicants a choice to use the funds they received to: (a) purchase a primary home in Evanston; (b) make home improvements to an existing primary residence in the City; or (c) pay down the mortgage for a primary residence in the City.[9]

20. On or about March 27, 2023, the City amended the Program to add an option by which eligible applicants could choose to receive an unrestricted cash payment. Persons who elect

---

[7] Letter from C. Boyden Gray, on behalf of the Project on Fair Representation, to the City of Evanston, at 2-4 (Mar. 18, 2021), *available at* https://perma.cc/XF37-QMLA.

[8] Affidavit of Audrey Thompson (Thompson Aff.), Dkt. 13-1 at 2; City of Evanston Local Reparations: Restorative Housing Program Eligibility Application, Ancestor Application Draft, Dkt. 20-1 at 20-26; City of Evanston Local Reparations: Restorative Housing Program Eligibility Application, Direct Descendant, Dkt. 20-1 at 27-42.

[9] Resolution 37-R-21, Dkt. 20-1 at 15-18.

to receive an unrestricted cash payment are not required to use it for housing related expenses in Evanston or to provide any account of how they use the funds.[10] During the City's discussion of this amendment, the City's Corporation Counsel stated that while "the Restorative Housing Program aimed to keep residents or bring residents back to Evanston, with the cash benefit that is no longer part of the equation."[11] Corporation Counsel also stated that "they do not have the research to show that a cash benefit would be a narrowly tailored remedy for those harmed."[12]

21. Payments made to applicants through the Program are funded through receipts from the City's Municipal Cannabis Retailer Occupation Tax.[13]

22. By January 11, 2024, the City made determinations as to which applicants were eligible. It subsequently began distributing payments to eligible applicants.[14]

23. The City has identified and paid at least 141 applicants who qualified as an "Ancestor."[15] These payments totaled $3.525 million.

---

[10] Resolution, 27-R-23, Dkt. 21 at 59; City of Evanston, Minutes, Reparations Committee (Apr. 6, 2023), Dkt. 21 at 52.

[11] Minutes, Reparations Committee (Apr. 6, 2023), Dkt. 21 at 53.

[12] *Id.*

[13] Resolution, 126-R-19 (Nov. 14, 2019), *available at* https://perma.cc/2TS7-2KR7; Resolution, 64-R-22 (Aug. 8, 2022), *available at* https://perma.cc/QEW6-R3ZS.

[14] *See* Defendant City of Evanston's Answer and Defenses to the Complaint (Answer), Dkt. 42 at 7; Memorandum from Tasheik Kerr, Assistant to the City Manager, to the Members of the Reparations Committee (Sept. 5, 2024), Dkt. 20-1 at 62-66.

[15] Chicago Tribune, Evanston has paid out just over $5 Million (Sept. 14, 2024), Dkt. 20-1 at 123-24.

24. The City has also identified at least 454 applicants who qualified as a "Direct Descendant." Evanston has begun paying those persons, subject to the availability of funds, based on the order of a random distribution number generated by the City.[16]

25. To date, the City has distributed well over $5 million to applicants who qualified as an "Ancestor" or a "Direct Descendant." The City made such payments in the form of unrestricted cash payments as well as through the other methods of financial assistance available under the Program. Such financial assistance has included payments for mortgage assistance and home repairs and renovations. Absent relief from this Court, the City will continue to distribute millions of dollars in unrestricted cash payments or financial assistance for the purchase, improvement, repair or maintenance of housing on a racially discriminatory basis. In fact, paying $25,000 in cash or financial assistance to each of the 454 applicants who have qualified as a "Direct Descendant" under the Program's racially discriminatory criteria would total more than $11 million.[17]

26. The Program also provides for potential payments to persons who do not qualify as an "Ancestor" or a "Direct Descendant," provided they demonstrate that they "experienced housing discrimination due to the City's policies/practices after 1969." To be eligible for this program, applicants must provide a "proof of race." This provision, however, does not change the race-based nature of the City's Program. Even assuming that the City intends to administer this part of the program in a race-neutral manner, applications from persons who allege they were victims of discrimination after 1969 may not be reviewed, approved, and funded until all eligible applicants who qualified as an "Ancestor" or a "Direct Descendant" have been compensated. Thus, the very

---

[16] *See* Answer, Dkt. 42 at 7-8.

[17] *See* Dkt. 20-1 at 123-24; Memorandum from Tasheik Kerr, Assistant to the City Manager, to City of Evanston Reparations Committee (Sept. 5, 2024), Dkt. 20-1 at 62-63.

operation of this part of the program depends on the completion of the unquestionably race-based components. In other words, any potential victims of post-1969 discrimination must wait until millions of dollars have been distributed based on race to almost 600 persons before even having the opportunity to seek compensation.[18]

### III. The City Has Not Made Findings Sufficient to Establish That Its Racially Discriminatory Program is Narrowly Tailored to Remediate Specific Identified Instances of Discrimination

27. None of the City resolutions authorizing or otherwise relating to the Program contains any findings of "specific, identified instances of past discrimination that violated the Constitution or a statute" that the City is attempting to remediate. None identifies "the precise scope of the injury" caused by these instances of discrimination that it seeks to remedy. And none points to any "strong basis in evidence to conclude" that the Program's race-based action is necessary. *Callais*, 146 S. Ct. at 1152. Rather, the resolutions include nothing more than boilerplate statements that "recognize[]" or "acknowledge[]" past alleged discrimination or ongoing unspecified racial disparities. They contain virtually no information about what the alleged discriminatory acts or policies were, during what years the discriminatory acts occurred, the policies that were in effect, or the scope of the injury caused by these acts or policies. The resolutions do not attempt to tie any remedial programs to specific instances or identifiable victims of past discrimination and instead focus on race alone.[19]

---

[18] *See* Resolution R-37-21, Dkt. 20-1 at 11-12; Restorative Housing Program Eligibility Application, Dkt. 20-1 at 20-42.

[19] *See* Resolution 37-R-21, Dkt. 20-1 at 6-7; Resolution 27 R-23, Dkt. 20-1 at 59-60; Resolution 58-R-19 (June 5, 2019), *available at* https://perma.cc/PTQ9-J5M7; Resolution 126-R-19, *supra* n.13; Resolution, 64-R-22, *supra* n.13.

28. The City's website includes a report entitled "Evanston Policies and Practices Directly Affecting the African American Community" ("the Report"). The latest copy of the Report on the City's website is labeled a "working document" that was last updated on November 21, 2021. It does not appear that the Report was ever formally adopted by the City through a resolution or comparable legislative action. The Report states only that it was created "at the request of City of Evanston Staff."[20]

29. The Report does not make findings of any specific identified instances of past discrimination that violated the Constitution or a statute that occurred in the City of Evanston. It does not identify the scope of the injury caused by these acts or policies. Nor does it address what remedy might be appropriate. Rather, the Report states that it is intended to "present evidence and factual information *related to* historic and contemporary instances where the City of Evanston *might have* facilitated, participated in, enacted, or stood neutral in the wakes of acts of discriminatory practices in all *aspects of engagement* with the Evanston Black community." The Report states that its intention "is to *compile*, in one cohesive document, published facts from various sources, works, studies, surveys, articles, recordings, policies, and resources *that are available for public consumption*." The Report further states that "the authors remain neutral and take no responsibility regarding the end use of this document and the information contained within the document. In addition, the authors do not take any positions other than fulfilling the fact-finding assignment as requested by the City of Evanston." The authors also state that "[t]his report is in progress and will have periodical updates when new information presents itself."[21]

---

[20] *See* Morris (Dino) Robinson, Jr. and Jenny Thompson, *Evanston Policies and Practices Directly Affecting the African American Community*, at 3 (Working Document, Nov. 2021), *available at* https://perma.cc/E3GM-AFCJ.

[21] *Id.* at 3 (emphases added).

30. The Program is not tailored to the facts relating to housing and zoning policies that are discussed in the Report. The Report identifies actions that the City may have carried out or been involved with at various times between approximately 1920 and 1949 to restrict housing opportunities for black residents of Evanston to a concentrated area of the City and to condemn housing occupied by black residents. The Report suggests these actions, coupled with private discrimination by realtors and lenders and through restrictive covenants, resulted in overcrowding, excessive rents, and other adverse housing conditions for residents living in the areas where black residents were segregated.[22] The Program, however, does not restrict compensation to black residents who allege that they were subjected to unlawful housing discrimination, who lived in the City during the time period identified in the Report (approximately 1920 to 1949) when the practices occurred, who lived in the areas where black residents were segregated, or whose homes were condemned. Under the Program, being black and having lived in the City as an adult between 1919 and 1969 are sufficient to qualify a person to receive a payment as an "Ancestor" and for their children, grandchildren, and great-grandchildren to receive a payment as a "Descendant."

31. The Program does not provide any opportunities for compensation for residents of other races who may have lived in the area where black residents were segregated and suffered adverse housing consequences as a result. For example, non-black Hispanic or Jewish persons, or other non-black persons, who were married to a black person during this time period and who allege they had to live in the racially segregated area of Evanston because of the race of their spouse would not be eligible for any compensation as an "Ancestor," but their spouse or former spouse would qualify automatically because of his or her race.

[22] *Id.* at 30-55.

32. By providing unrestricted cash payments and housing-related financial assistance through the Program solely to current or former black residents and their descendants, but not offering or distributing those benefits to other Evanston residents or descendants, the City has denied persons the opportunity to receive tangible City benefits or services because of race, and has caused harm to such persons.

33. Although the City has not accepted any applications for the Program since November 5, 2021, none of the resolutions authorizing the Program have been rescinded and nothing in the text of these resolutions limits the City's ability to restart accepting applications at any time.

34. The actions of the City, as described in this Complaint, were intentional, willful, and taken with reckless disregard for the rights of other persons.

## IV. The City Refused to Cooperate with the United States' Investigation

35. In March 2026, the United States informed the City that it had opened an investigation into the Program under the Equal Protection Clause and the Fair Housing Act. The United States requested that the City provide information and documents related to the Program, including information about how it operated, what evidence the City had compiled of the housing discrimination it was intended to remedy, and why the City believed its Program complied with the Equal Protection Clause and the Fair Housing Act.

36. Other than referring the United States to its website, the City declined to provide any additional information or documents to the United States.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION, AMENDMENT XIV

37. The United States re-pleads the preceding paragraphs and incorporates them herein by reference.

38. Section 1 of the Fourteenth Amendment provides, *inter alia*, that States shall not "deny to any person within its jurisdiction the equal protection of the laws."

39. Through its actions as alleged above, the City has granted and denied its residents and former residents, and their descendants, financial benefits, and the opportunity to compete for those benefits, because of race. And these race-based actions are not narrowly tailored to serve a compelling governmental interest.

40. Through these actions, the City has denied persons the equal protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment.

**SECOND CAUSE OF ACTION: VIOLATION OF THE FAIR HOUSING ACT**

41. The United States repleads the preceding paragraphs and incorporates them herein by reference.

42. The Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, makes it unlawful, *inter alia*, for any person or entity whose business includes engaging in residential real estate-related transactions—which is defined to include providing financial assistance for purchasing, constructing, improving, repairing, or maintaining a dwelling—to discriminate against any person because of race or color in making available, or in the terms or conditions of, a residential real estate-related transaction. 42 U.S.C. § 3605.

43. Through its Program, the City is a person or entity whose business includes engaging in residential real estate financial assistance within the meaning of 42 U.S.C. § 3605. Specifically, through the Program, the City provides financial assistance for purchasing,

constructing, improving, repairing or maintaining dwellings, within the meaning of 42 U.S.C. §§ 3602(b) and 3605.

44. Through its actions as alleged in this Complaint, the City has discriminated because of race or color in making available, and in the terms and conditions of, residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605.

45. Under 42 U.S.C. §3614(a), the City's conduct constitutes:

a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, and

b. A denial to a group of persons of rights granted by Fair Housing Act that raises an issue of general public importance.

46. Persons injured by the City's conduct are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

**PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an Order that:

a. Declares that the City's use of race or color as an eligibility requirement for participation in the Program violates the Equal Protection Clause of the Fourteenth Amendment and the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*.;

b. Enjoins the City, its agents, employees, and all other persons in active concert or participation with them, from:

i. continuing to administer the Program in a manner that unlawfully denies equal protection to persons because of race or color, in violation of the Equal Protection Clause of the Fourteenth Amendment;

ii. continuing to administer the program in a manner that discriminates because of race or color in making available, or in the terms or conditions of, residential real estate transactions, in violation of the Fair Housing Act;

iii. failing or refusing to take all affirmative steps necessary to ensure the Program, to the extent the City continues to operate it, complies with the Equal Protection Clause of the Fourteenth Amendment and the Fair Housing Act;

c. Awards monetary damages to each person aggrieved by the City's discriminatory conduct, under 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against the City to vindicate the public interest under 42 U.S.C. § 3614(d)(1)(C); and

e. Awards such additional relief as the interests of justice may require.

**The United States Demands a Jury Trial on All Issues Triable to a Jury**

Dated: October 16, 2026

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney Northern
District of Illinois

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC SELL
Deputy Assistant Attorney General

CARRIE PAGNUCCO
Chief

/s/ Timothy J. Moran
TIMOTHY J. MORAN (Ill. Bar No.
6207397)
Deputy Chief
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530
Tel.: (202) 532-5422
Fax: (202) 514-1116
Timothy.Moran@usdoj.gov

Attorneys for Plaintiff
United States of America