**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland, | ) | Case No. 24-cv-4269 |
| Plaintiffs, | ) | |
| v. | ) | Hon. John F. Kness |
| City of Evanston, | ) | Hon. Gabriel A. Fuentes |
| Defendant. | ) | |

**DEFENDANT CITY OF EVANSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF-INTERVENOR UNITED STATES OF AMERICA'S COMPLAINT IN INTERVENTION PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## INTRODUCTION

This Court should dismiss Plaintiff-Intervenor the United States of America's ("the Government") Complaint in Intervention (the "Government's Complaint") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) with prejudice for three reasons.

*First*, dismissal of the Government's Fair Housing Act claim is warranted under Rule 12(b)(6) because the Government fails to plausibly allege that Evanston is subject to the provision it invokes. The Government offers nothing beyond an insufficient recitation of the statutory text that Evanston is in the "business" of real estate-related transactions. However, Section 3605 of the Fair Housing Act only reaches persons and entities "whose *business* includes engaging in residential real estate-related transactions," 42 U.S.C. § 3605(a), and courts in this District have only it to lenders, brokers, and appraisers, not to a municipality. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014). Because the provision does not apply to Evanston, the claim should be dismissed.

*Second*, dismissal of the Government's Fair Housing Act claim is also proper under Rule 12(b)(6) because the Government's request for monetary damages on behalf of "persons aggrieved" under 42 U.S.C. § 3614(d)(1)(B) is untimely on its face. That request is a tort action for damages subject to the three-year limitations period in 28 U.S.C. § 2415(b). The Government alleges that the persons harmed by Evanston's Local Reparations Restorative Housing Program ("the Program") are those who were denied the opportunity to apply for benefits from the Program because of the alleged use of race as a criterion. (Dkt. 70, Gov't Compl. ¶ 31.) It also concedes that the application period closed on November 5, 2021, and that Evanston has not accepted applications since. (*Id.* ¶¶ 18, 33.) Thus, any claim for damages therefore accrued no later than November 5, 2021, more than four and a half years before the Government moved to intervene.

*Finally,* dismissal of the Government's Equal Protection Clause claim is proper under Rule 12(b)(1) because the Government lacks standing to assert the claim. Because the Government seeks relief that is broader than and different from the relief Plaintiffs seek, including money damages, civil penalties, and an order halting the Program, it must establish its own Article III standing. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017). However, it has not done so. Instead, the Government's Complaint alleges that Evanston denied equal treatment to other "persons," but not to the Government itself, and the Government has no equal protection rights of its own. (Dkt. 70, Gov't Compl. ¶ 40). *See also Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). Nor does 42 U.S.C. § 2000h-2 fill that gap, because that statute permits the Attorney General to intervene in an existing equal protection case, but it does not create a cause of action, and it does not dispense with Article III's injury-in-fact requirement.

Thus, the Government's Complaint in Intervention should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

In 2019 and 2020, after investigating Evanston's role in causing and perpetuating housing discrimination within its borders, Evanston's City Council passed resolutions acknowledging Evanston's past discriminatory housing policies and practices toward its Black residents between 1919 and 1969, and how the effects of this discrimination linger in Evanston. (*See* Dkt. 70, Gov't Compl. ¶¶ 27–28; Dkt. 20-1 at 6, Resolution 37-R-21.) To address Evanston's history of housing discrimination, on March 22, 2021, the City Council adopted Resolution 37-R-21, which created the Program and adopted the Program's guidelines. (Dkt. 20-1 at 6–18, Resolution 37-R-21.) The Program is funded through the City's Municipal Cannabis Retailers' Occupation Tax. (Dkt. 70, Gov't Compl. ¶ 21.)

Approved applicants could receive a $25,000 benefit under one of three eligibility categories. (*Id.* ¶¶ 14, 26.) The first two categories covered "Ancestors," defined as Black or African American individuals who lived in Evanston as adults between 1919 and 1969, and "Direct Descendants" of Ancestors.[1] (*Id.* ¶ 14.) The third category covered Evanston residents who could show that they experienced housing discrimination due to a City ordinance, policy, or procedure after 1969; the Program guidelines did not list race among the proof required for this category. (Dkt. 20-1 at 14, Resolution 37-R-21; *see also* Dkt. 70, Gov't Compl. ¶ 26.)

As originally adopted, the Program allowed approved applicants to apply their benefit towards purchasing a home in Evanston, improving an Evanston residence, or paying down the mortgage on an Evanston residence. (Dkt. 70, Gov't Compl. ¶ 19.) On March 27, 2023, the City amended the Program to allow approved applicants to receive their benefit in the form of a cash payment. (*Id.* ¶ 20; Dkt. 20-1 at 59–60, Resolution 27-R-23.) The Government alleges—and Evanston reserves all rights to challenge—that approved applicants who choose the direct cash payment "are not required to use it for housing related expenses in Evanston or to provide any account of how they use the funds." (Dkt. 70, Gov't Compl. ¶ 20.)

Evanston accepted applications for the Program from September 21, 2021 to November 5, 2021, when the application period closed. (*Id.* ¶¶ 18, 33.) As the Government admits, Evanston has not accepted any applications for the Program since November 5, 2021. (*Id.* ¶ 33.) Evanston has since reviewed the applications it received during the application period and has been distributing benefits to approved applicants, subject to the availability of funds. (*Id.* ¶¶ 22–25.)

[1] Evanston disputes the Government's characterization of these categories and the factual allegations in the Government's Complaint but accepts the Government's allegations as true solely for purposes of this Motion. Evanston reserves all rights to challenge the Government's characterizations and the factual allegations in the Government's Complaint.

Plaintiffs Margot Flinn, Carol Johnson, Stasys Neimanas, Barbara Regard, Henry Regard, and Stephen Weiland (the "Plaintiffs") filed the original lawsuit on May 23, 2024, challenging the Program under the Equal Protection Clause through 42 U.S.C. § 1983. (Dkt. 1.) On June 16, 2026, more than two years later, the Government moved to intervene under 42 U.S.C. § 2000h-2. (Dkt. 48.) On October 16, 2026, the Court granted the motion. (Dkt. 69.) The Government filed Government's Complaint the same day. (Dkt. 70.) In addition to an Equal Protection Clause claim, the Government asserts a claim under Section 3605 of the Fair Housing Act and seeks monetary damages for "aggrieved persons" and civil penalties. (Dkt. 70, Gov't Compl. ¶¶ 37–46; *id.* at 14–15 (Prayer for Relief).)

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper if a plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include facts showing a plausible, not merely conceivable, entitlement to relief and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("a complaint must include facts showing a plausible—not merely "conceivable"—entitlement to relief."). Furthermore, "dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017).

Dismissal under Rule 12(b)(1) is proper if a plaintiff lacks standing to bring their claim, depriving the court of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Love Church v.*

*City of Evanston*, 896 F.2d 1082, 1084 (7th Cir. 1990) ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.") (citation omitted). To demonstrate standing and establish that a court has subject-matter jurisdiction, a plaintiff must show "(1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 775 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff bears the burden of establishing that it meets the required elements of standing." *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Where, as here, a defendant raises a facial challenge to standing, the court applies the same plausibility standard that governs motions under Rule 12(b)(6). *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015).

## ARGUMENT

The Government's Complaint should be dismissed in its entirety. First, the Government fails to state a Fair Housing Act claim because it does not plausibly allege that Evanston's "business includes engaging in residential real estate-related transactions" under 42 U.S.C. § 3605. *See* Section I, *infra*. Second, the Government's request for monetary damages under 42 U.S.C. § 3614(d)(1)(B) is time-barred on the face of its Complaint. *See* Section II, *infra*. Third, the Government lacks Article III standing to pursue its Equal Protection Clause claim because it does not allege that it suffered any injury in fact, and 42 U.S.C. § 2000h-2 does not supply one. *See* Section III, *infra*. The Government's other requested relief is derivative of its Equal Protection Clause and Fair Housing Act claims, and thus must similarly fail along with those claims.

### I. THE GOVERNMENT'S FAIR HOUSING ACT CLAIM FAILS BECAUSE EVANSTON'S "BUSINESS" DOES NOT INCLUDE "ENGAGING IN RESIDENTIAL REAL ESTATE-RELATED TRANSACTIONS."

Evanston and its Program do not fall within 42 U.S.C. § 3605, which makes it unlawful for

"any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). And, although the Government alleges Evanston "is a person or entity whose business includes engaging in residential real estate financial assistance" under the Fair Housing Act because, through the Program, "the City provides financial assistance for purchasing, constructing, improving, repairing or maintaining dwellings, within the meaning of 42 U.S.C. §§ 3602(b) and 3605," (Dkt. 70, Gov't Compl. ¶ 43). This bare-bones recitation of the statute's requirements is insufficient to state a claim under 42 U.S.C. § 3605. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885–87 (7th Cir. 2012) (holding that "conclusory allegations" of a statutory claim fail to state a claim for relief).

Evanston is not an entity in the "business" of residential real estate-related transactions and thus cannot be subject to a claim under Section 3605. The provision's text and history make clear that it is intended to apply only to defendants that are commercial actors actively engaged in the "business" of real estate-related transactions. The provision defines a "residential real estate-related transaction" in relevant part as "making or purchasing of loans or providing other financial assistance (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate" and "[t]he selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b)(1)–(2). Prior to the Fair Housing Act's 1988 amendments, the scope of Section 3605 clearly encompassed only commercial actors. *See* Civil Rights Act of 1968 (Fair Housing Act), Pub. L. No. 90-284, tit. VIII, § 805, 82 Stat. 73, 83 (1968) (codified as amended at 42 U.S.C. § 3605) (". . . it shall be unlawful for any bank, building and loan association, insurance company or other corporation . . . whose business consists in whole or in part in the

making of commercial real estate loans, to deny a loan or other financial assistance to a person applying therefor for the purpose of purchasing, constructing, improving, repairing, or maintaining a dwelling . . . because of the race [or] color . . . of such person . . . .").

And, while the 1988 amendment to the provision broadened its scope, the legislative history of the amendment makes clear that it was only intended to extend to the secondary mortgage market rather than be a more broadly applicable restriction for all potential non-commercial entities. H.R. Rep. No. 100-711, at 30 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2191. ("Under amended Section [3605], the provisions of the Act extend to the secondary mortgage market."). The secondary mortgage market, which consists of the buying and selling of mortgages after origination, is different in kind than the characteristics of the Program, which provides benefits to individuals affected by Evanston's alleged past discriminatory practices. *See* Julia Kagan, *The Secondary Mortgage Market Explained: Key Insights and Benefits*, INVESTOPEDIA (May 6, 2026), https://www.investopedia.com/terms/s/secondary_mortgage_market.asp (describing the secondary mortgage market). Indeed, in the Northern District of Illinois, Section 3605 has been found to only apply to actual real estate businesses and professionals. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014) ("Although Plaintiff has alleged in the complaint that Defendants have violated section 3605, courts in this District have held that section 3605 applies only to transactions involving defendants that are lenders, brokers, or appraisers of mortgage loans").

The Government's Complaint contains no factual allegations to support any conclusion that Evanston lends money for real estate transactions, brokers such transactions, or provides appraisal services for mortgages. Instead, the Government's claim is based upon characterizing

the Program's financial benefit as "financial assistance" under Section 3605, even while simultaneously characterizing the Program as providing "compensation." (Dkt. 70, Gov't Compl. ¶¶ 1, 4, 25, 30–32, 39.) Even alleging the Program's "financial assistance" relates to housing expenses is markedly different from alleging Evanston and the Program are either commercial actors or real-estate transactions of the kind that courts recognize as falling within Section 3605. *See People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 21 ("Our holding is consistent with federal case law. . . [n]umerous cases have held that this language is limited in application to circumstances where the defendants had the ability to affect the terms on which credit is extended to the borrower, such as where the defendants were lenders, brokers, or appraisers of mortgage loans or affiliates of the lender collecting the loan payments"). This is especially true given that the Seventh Circuit has cautioned against stretching the definition of "other financial assistance" beyond the commercially focused reach of Section 3605. *See N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 297 (7th Cir. 1992) (concluding property or casualty insurance is not "financial assistance" under Section 3605). Accordingly, 42 U.S.C. § 3605 cannot be used to assert a claim against Evanston and dismissal with prejudice is warranted under Rule 12(b)(6).

## II. THE GOVERNMENT'S REQUEST FOR MONETARY DAMAGES IS UNTIMELY ON ITS FACE AND MUST BE DISMISSED UNDER RULE 12(b)(6).

Dismissal is also warranted under Rule 12(b)(6) because the Government's claim, brought under 42 U.S.C. § 3614(d)(1)(B), is untimely. Whether a motion to intervene is timely is a separate procedural inquiry from whether the intervenor's claims and requested relief are barred by the applicable statute of limitations. *Lewis v. City of Chicago*, 702 F.3d 958, 961 (7th Cir. 2012). Here, the Government's request for monetary damages is untimely.

Because Section 3614 does not include a statute of limitations, courts apply the statute of limitations based upon the relief the Government requests. *See, e.g., Garcia v. Brockway*, 526 F.3d

456, 460–61 (9th Cir. 2008). The Government requests an award of "monetary damages to each person aggrieved by the City's discriminatory conduct, under 42 U.S.C. § 3614(d)(1)(B)." (Dkt. 70, Gov't Compl. at 15 (Prayer for Relief).) Section 3614 allows a court to "award such other relief as the court deems appropriate, including monetary damages to persons aggrieved" when the Attorney General brings a civil action to enforce the Fair Housing Act. 42 U.S.C. § 3614(d)(1)(B). The Supreme Court has recognized "an action brought for compensation by a victim of housing discrimination is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also United States v. Balistrieri*, 981 F.2d 916, 927 (7th Cir. 1992) (describing suit under § 3614(d)(1)(B) as "essentially a tort action for damages").

Accordingly, because the Government is seeking monetary damages for a cause of action founded on a tort, the request for monetary damages under 42 U.S.C. § 3614(d)(1)(B) is subject to a three-year statute of limitations. *See* 28 U.S.C. § 2415(b) ("[E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues . . . ."). Federal courts have applied the three-year statute of limitations to such claims. *See, e.g.*, *Garcia*, 526 F.3d at 460–61.

On the face of the Government's Complaint, the request for the monetary damages are time-barred and must be dismissed. The Government's Complaint notes "[p]ersons injured by the City's conduct are the 'persons aggrieved' under the Fair Housing Act." (Dkt. 70, Gov't Compl. ¶ 46.) The only aggrieved persons the Government's Complaint describes are those Evanston residents who were allegedly denied "the opportunity to receive tangible City benefits or services" because of the alleged use of race as an eligibility requirement for the Program. (*Id.* ¶¶ 31–32.) The Government's Complaint also makes clear, however, that the "opportunity" to receive these

benefits was tied to a specific application period from September 21, 2021 to November 5, 2021. (*Id.* ¶ 18.) It admits that the City has not accepted applications for the Program since that period. (*Id.* ¶ 33.) Thus, the alleged harm to persons denied the "opportunity" to apply to receive benefits ended on November 5, 2021, and the Government's ability to seek monetary damages accrued no later than that date. *United States v. Robert's Nursing Home, Inc.*, 710 F.2d 1275, 1278 (7th Cir. 1983) ("Once liability is established, a cause of action accrues and the statute of limitations begins to run"). The Government did not file its motion to intervene in this action until June 16, 2026, Dkt. 48, more than four and a half years after the ability to request this relief accrued and more than a year and a half after the three-year statute of limitations expired on November 5, 2024. As a result, dismissal with prejudice under Rule 12(b)(6) is warranted.

Given the public nature of the Program, the Government cannot seek to avoid the three-year time bar through any statutory exceptions. *See* 28 U.S.C. § 2416(c) (only allowing the Government to toll a statute of limitations when "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."). Equally, the Government cannot avoid the time bar through the continuing violation doctrine. *See Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (distinguishing the "lingering consequences" of an alleged statutory violation from an actual manifestation of a new violation each day). Accordingly, the untimeliness of the Government's request for monetary damages is clear from the allegations of its Complaint and thus should be dismissed with prejudice under Rule 12(b)(6).

## III. THE GOVERNMENT'S EQUAL PROTECTION CLAIM MUST BE DISMISSED UNDER RULE 12(b)(1) BECAUSE THE GOVERNMENT FAILED TO ALLEGE AN INJURY IN FACT.

The Government lacks standing for its Equal Protection Clause claim. To seek relief in an Article III court, every plaintiff must plead an injury in fact that affects the plaintiff "in a personal

and individual way," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). The Fourteenth Amendment's Equal Protection Clause "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct," *United States v. Hays*, 515 U.S. 737, 743–44 (1995) (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). Applying this principle, the Supreme Court held that a State lacked standing to bring an equal protection challenge because it "has no equal protection rights of its own." *Haaland*, 599 U.S. at 294. The same is true of the Government, which does not and cannot allege that Evanston denied *it* equal treatment. *See United States v. City of Philadelphia*, 482 F. Supp. 1248, 1268 (E.D. Pa. 1979) (dismissing the Attorney General's Fourteenth Amendment claims because those provisions "were meant to protect neither the United States government nor its Attorney General" but "individual citizens, who, not surprisingly, are the only ones alleged to have suffered any injury"), *aff'd*, 644 F.2d 187 (3d Cir. 1980); *see also United States v. Mattson*, 600 F.2d 1295, 1300 (9th Cir. 1979) (explaining that "[a]ny lesser standard than a showing of actual injury to those who assert standing would require a court to rule on important constitutional issues in the abstract").

Dismissal is thus proper because the Government's factual allegations that provide the basis for its Equal Protection Clause claim relate only to alleged harms suffered by *others* and not the Government itself. (*See, e.g.*, Dkt. 70, Gov't Compl. ¶¶ 39–40 (alleging that Evanston has improperly denied its "*residents and former residents, and their descendants*, financial benefits, and the opportunity to compete for those benefits" and "denied *persons* the equal protection of the laws") (emphasis added).) There is no reference in the Government's Complaint to any specific injury or theory that Evanston's alleged actions caused any harm to the *Government*. The Government does not allege that the Program uses federal funds, implicates a federal program, or interferes with any federal official or function. To the contrary, it alleges that the Program is funded

by the City's own cannabis tax revenue. (*Id.* ¶ 21.) Thus, the entirety of the allegations concerning the Government's Equal Protection Clause claim rests on alleged harm to others.

The Government's Complaint is likewise deficient because it does not allege any facts or legal theory supporting a cause of action for the Government to bring its Equal Protection Clause claim. While the Government cites 42 U.S.C. § 2000h-2 to justify its intervention, (Dkt. 70, Gov't Compl. ¶ 7), the statute applies only "[w]henever an action has been commenced" by another party, and then provides only that the Attorney General "may intervene in such action" when there is a properly plead injury in fact. 42 U.S.C. § 2000h-2; *see also Sayman v. Nat'l Evaluation Sys., Inc.*, 2002 WL 598519, at *1 (N.D. Ill. Apr. 17, 2002) ("42 U.S.C. § 2000h-2 does not create an independent federal claim; it merely allows the United States Attorney General to intervene in a civil rights action if the matter is of general public importance."). Here, the Government lacks standing as this case centers on a program the City is administering within the bounds of Evanston to remedy the City's acknowledged prior discrimination using the City's cannabis tax revenue. And, where Congress wanted the Attorney General to "institute" civil rights actions, it said so. *See, e.g.*, 42 U.S.C. §§ 2000b(a), 2000c-6(a). And courts have declined to imply such authority for the United States to sue to enforce the Fourteenth Amendment rights of individuals. *See United States v. Solomon*, 563 F.2d 1121, 1124–29 (4th Cir. 1977); *Mattson*, 600 F.2d at 1299–1300.

The statute's final sentence, "the United States shall be entitled to the same relief as if it had instituted the action," does not change the analysis. That sentence governs the scope of relief; it does not dispense with Article III standing, because "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). At most, it places the Government in the position of a plaintiff that "instituted the action" and such a plaintiff must plead its own injury. The Government's reliance

on *Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969) in its memorandum in support of intervention, (*see* Dkt. 49 at 4), is misplaced. *Spangler* addressed the scope of relief, not standing, decades before *Lujan* and *Town of Chester*, and relied in part on the Attorney General's independent authority to institute a school desegregation action under 42 U.S.C. § 2000c-6. *Spangler*, 415 F.2d at 1244. The Government identifies no comparable authority for the Equal Protection Clause claim it asserts here.

The Government has previously asserted that it has an interest whenever federal law is violated, (*see* Dkt. 49 at 7), and in its reply in support of its motion to intervene it asserted that "the United States is always injured when a state or local government denies equal protection of the law," (Dkt. 62 at 4 n.2). But the Government's Complaint contains no such allegation, and it cannot be amended through briefing. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Regardless, at least one court in this District has already rejected this "sovereign injury" theory as a basis for the Government's standing. *See American Alliance for Equal Rights v. Raoul*, 795 F. Supp. 3d 1073, 1078 (N.D. Ill. 2025), *appeal docketed*, No. 25-2461 (7th Cir. Aug. 26, 2025) (rejecting the United States' *parens patriae* theory as resting on "only dicta and non-precedential out-of-circuit opinions," and finding "no binding authority stating that, where there is no case or controversy, the mere fact that the United States is a party is sufficient to bestow standing"). Instead, courts in this Circuit have recognized the United States' standing only when it alleges "actual or threatened interference with the performance of its proper governmental functions." *See United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984); *United States v. Illinois*, 796 F. Supp. 3d 494, 508 (N.D. Ill. 2025). The Government alleges no such interference. (*See* Dkt. 70.) The Government's reliance in its reply brief in support of its motion to intervene on *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 430–31

(1976), is misplaced. (*See* Dkt. 62 at 4 n.2.) *Pasadena* held only that the United States' participation kept a desegregation case from becoming moot and it never addressed whether the United States had suffered an injury in fact, and such a "drive-by jurisdictional ruling[]" has "no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Because the Government has not identified the theory of standing underlying its Equal Protection Clause claim in its Complaint, Evanston reserves the right to respond to any new theory the Government raises in opposition.

The Government also cannot rely on its alleged standing to bring its Fair Housing Act claim to save its Equal Protection Claim, or on the Plaintiffs' alleged standing. The Government must establish an independent basis for standing for itself and for each of its claims. *See Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016) (recognizing that "intervenor cannot step into the shoes of the original party . . . unless the intervenor independently fulfills the requirements of Article III.") (citation omitted); *Town of Chester*, 581 U.S. at 439 ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). The Government seeks broader relief than Plaintiffs because it introduces relief under the Fair Housing Act, including monetary damages, injunctive relief, and civil penalties, and seeks broader injunctive relief than that sought by Plaintiffs under the Equal Protection Clause. (*Compare* Dkt. 1, Pls.' Compl. at 9 (Prayer for Relief), *with* Dkt. 70, Gov't Compl. at 14–15 (Prayer for Relief).) Among other relief, Plaintiffs ask the Court to "enjoin Defendant from using race as [a Program] eligibility requirement" and "award payments [under the Program] to all eligible individuals" (Dkt. 1, Pls.' Compl. at 9 (Prayer for Relief).) Meanwhile, the Government seeks injunctive relief halting the Program absent broad administrative changes and money awards to allegedly "aggrieved persons" and to the United

States itself under the Fair Housing Act (Dkt. 70, Gov't Compl. at 14–15 (Prayer for Relief)). Plaintiffs merely seek to broaden eligibility and obtain the defined benefit of the Program for themselves while the Government seeks unqualified statutory damages for both an unbounded population of "aggrieved persons." A request for broader injunctive relief and a substantially different money judgment by the intervenor is the epitome of "different" relief requiring independent standing. *Town of Chester*, 581 U.S. at 440.

Accordingly, dismissal with prejudice is proper because the Government failed to plead an independent injury in fact for its Equal Protection Clause claim. *See Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("We have always insisted on strict compliance with [the] jurisdictional standing requirement."). Dismissal is also proper because the lack of standing is apparent on the face of the Government's Complaint. *See Silha*, 807 F.3d at 173–74 (challenges to standing are evaluated under Rule 12(b)(1) using the same plausibility standard as Rule 12(b)(6)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (at the pleading stage, the plaintiff "must 'clearly . . . allege facts demonstrating' each element" of standing) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).[2]

## CONCLUSION

WHEREFORE, Defendant Evanston respectfully requests that the Court grant this Motion and dismiss the Government's Complaint in Intervention with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

---

[2] As set forth above, the Court can resolve the Government's Complaint on threshold jurisdictional, statutory, and timeliness grounds without deciding the constitutional issues in the Complaint. *See Hill v. Madison Cnty., Ill.*, 983 F.3d 904, 906 (7th Cir. 2020). Evanston reserves all rights to demonstrate the Program is a lawful remedial measure that complies with the Equal Protection Clause and the Fair Housing Act if any portion of the Government's Complaint proceeds.

Dated: November 13, 2026

Respectfully submitted,

CITY OF EVANSTON
By: /s/ Precious S. Jacobs
*One of its attorneys*

Wade A. Thomson
Precious S. Jacobs
Kaiwen Luan
Jeffrey P. Salvadore
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel.: (312) 222-9350
Fax: (312) 527-0484
wthomson@jenner.com
pjacobs@jenner.com
kluan@jenner.com
jsalvadore@jenner.com

Alexandra B. Ruggie
Cynthia Grandfield
CITY OF EVANSTON
909 Davis Street, 3rd Floor
Evanston, Illinois 60201
Tel.: (847) 866-2937
aruggie@cityofevanston.org
cgrandfield@cityofevanston.org

*Counsel for Defendant City of Evanston*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I electronically filed the foregoing and related motion with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Precious S. Jacobs